_____

No. 95-2304
_____

Cass County Music Company;        *
Red Cloud Music Company,          *
                                  *
          Appellees,              *
                                  * Appeal from the United States
     v.                           * District Court for the
                                  * Eastern District of Arkansas.
C.H.L.R., Inc.; Jeffrey C.        *
Jones; Stanford P. Glazer;        *
John L. Marks, originally sued    *
as John L. Marx,                  *
                                  *
          Appellants.             *


_____

          Submitted: January 10, 1996

             Filed: July 8, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, JONES,[*] District Judge, and BOWMAN,
     Circuit Judge.

_____

BOWMAN, Circuit Judge.


     C.H.L.R., Inc., Jeffrey C. Jones, John L. Marks, and Stanford P.
Glazer (collectively, C.H.L.R.) appeal from decisions of the District Court
granting summary judgment to Cass County Music Company and Red Cloud Music
Company on the music companies' copyright infringement claim and denying
C.H.L.R. a jury trial.  We affirm in part and reverse and remand in part.

_____

     [*]The HONORABLE JOHN B. JONES, United States District
     Judge for the District of South Dakota, sitting by
     designation.

C.H.L.R. is a corporation that operates Stanford's Comedy House in Little Rock, Arkansas, among other enterprises. Jones, Marks, and Glazer are officers, directors, and shareholders of C.H.L.R., and Jones was day-to-day manager of the Comedy House in Little Rock. Cass County Music Company and Red Cloud Music Company own the copyrights to the four songs at issue in this dispute, and are members of the American Society of Composers, Authors and Publishers (ASCAP). ASCAP is a performing rights society, a nonexclusive licensee of the nondramatic public performance rights of its members.[1] Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc., 441 U.S. 1, 5 (1979).

The Comedy House in Little Rock opened in September 1993. Before and after its comedy shows, for perhaps thirty to forty-five minutes, the Comedy House played recorded and radio music over a stereo system. Soon after the Comedy House opened, ASCAP contacted Jones to advise him of the need for an ASCAP license if ASCAP sound recordings were to be played at the club. Negotiations on an appropriate fee for the license ensued, and subsequently broke down.

C.H.L.R. then instituted a "no-ASCAP" music policy at the Comedy House. That is, a list of ASCAP music was obtained, music tapes were made that included no ASCAP recordings, and the staff was instructed to play only the recorded non-ASCAP tapes when the club was open for business. Notwithstanding these precautions, ASCAP advised C.H.L.R. more than once that the Comedy House, when open to the public, persisted in playing music copyrighted by ASCAP members. ASCAP continued to recommend licensing to avoid legal

---

[1]ASCAP, being a nonexclusive licensee of the music companies' compositions, is not a party to this suit. As will be seen, however, ASCAP was a key player in the events leading up to the lawsuit.

action on a copyright infringement claim. On May 6, 1994, an ASCAP investigator visited the Comedy House and documented the public performance over the stereo system before the comedy show of four songs owned by ASCAP members, the music companies that are appellees here. C.H.L.R. contends that any copyright infringements were the result of its employees' inadvertence and were unknown to management, but acknowledges that it cannot refute the allegation that the violations did occur.

In August 1994, the music companies filed suit alleging copyright infringement based on the May 6, 1994, investigator's report, seeking an injunction, statutory damages, and costs and attorney fees. C.H.L.R. demanded a jury trial, which the District Court denied. In March 1995, the court granted summary judgment to the music companies, permanently enjoining C.H.L.R. from engaging in infringing activities, awarding $1000 in statutory damages for each of the four infringements, and awarding $1119 in costs and $5469 in attorney fees.

For its appeal, C.H.L.R. does not challenge the injunction (it has since obtained a license issued by Broadcast Music, Inc., another performing rights society) or "the District Court's conclusion that as a matter of law an infringement occurred for which the defendants are jointly and severally liable." Brief for Appellants at 2 n.1. The five issues C.H.L.R. does raise can be summarized as follows: The District Court erred in determining the infringements were "knowing," the court erred in rejecting C.H.L.R.'s jury demand, and the award of costs and attorney fees was error.

## II.

C.H.L.R. claims that a grant of summary judgment was precluded because there was a genuine issue of material fact on the question whether the infringements were "knowing." C.H.L.R. correctly

acknowledges that the state of mind of the copyright infringer is of no consequence to liability, so whether or not there is a genuine issue on the question is equally inconsequential to liability. "Once a plaintiff has proven that he or she owns the copyright on a particular work, and that the defendant has infringed upon those `exclusive rights'"--that is, he has proven the two key elements of copyright infringement, which are not at issue here--"the defendant is liable for the infringement and this liability is absolute." Pinkham v. Sara Lee Corp., 983 F.2d 824, 829 (8th Cir. 1992). The state of mind of the infringer is relevant, if at all, only to the award of damages. Although it is not entirely clear from the way the argument is structured in C.H.L.R.'s brief, we will assume that the contention is that there is a genuine issue of material fact (or that C.H.L.R. was not on notice that it should offer evidence to show one) on the question whether the infringements were unknowing, that is, "innocent," rather than knowing or "willful." "Innocent" and "willful" are terms of art in copyright law. If proved, innocence or willfulness may have a bearing on the amount of statutory damages awarded but cannot affect liability.

If "the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $100,000." 17 U.S.C. § 504(c)(2) (1994). Although C.H.L.R. claims that "[t]he ASCAP members contended that the infringement was knowing and willful," Brief of Appellants at 16, their prayer for damages in the complaint was for an amount between $500 and $20,000 per infringement, the statutory damages range when neither willful infringement nor innocent infringement is proved, and the District Court awarded only $1000 per infringement. Thus to the extent C.H.L.R. equates "knowing" with "willful," its argument is a nonstarter, since no willful violation was alleged by the music companies or found by the District Court.

On the other hand, copyright law also provides that the court in "its discretion may reduce the award of statutory damages to a sum of not less than $200" when the "infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2). If C.H.L.R., with its argument that there is a genuine issue of fact on whether its behavior was "knowing," is trying to fit its actions into the requirements for this statutory mitigation of damages for innocent infringement, we must conclude that there is no genuine issue of material fact for trial.

Before May 6, 1994, there were extensive conversations and written correspondence between ASCAP and C.H.L.R. regarding the purchase of an ASCAP license. It is clear from the record that ASCAP advised C.H.L.R.-- and that C.H.L.R. understood--that the Comedy House's unlicensed public performance of music in which ASCAP members owned performance rights would be a violation of law and could precipitate a lawsuit. C.H.L.R. opted not to purchase an ASCAP license (or any other license at that time), and instead decided to institute a policy, of questionable efficacy from the very beginning, that no ASCAP music was to be played at the Comedy House. That policy failed, as ASCAP advised C.H.L.R. on several occasions after the implementation of the "no-ASCAP" policy and before the filing of this lawsuit. The fact that there was such a policy and that it evidently was violated by employees of the club without management's notice is not relevant. C.H.L.R. and the individual defendants are liable for the copyright infringements, notwithstanding that the infringements were perpetrated by their employees and without their knowledge, because C.H.L.R. had the right and ability to supervise those employees, and because C.H.L.R. had a financial interest in the use of the copyrighted songs. See Pinkham, 983 F.2d at 834 (setting out the test for vicarious liability in copyright infringement actions). As a matter of law, based on the undisputed facts in this record, C.H.L.R.'s copyright infringements were not innocent. In fact,

with the repeated notices of ongoing infringement that ASCAP gave C.H.L.R., the apparent deliberate ignorance by management of the fact that violations continued even with the "no-ASCAP" policy in place, and the somewhat acrimonious "course of dealing between the parties," the music companies may have given C.H.L.R. a break by not seeking enhanced damages for willful infringement. Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1227-28 (7th Cir. 1991) (discussing notice, deliberate ignorance, and past dealings between the parties as relevant to finding of willful infringement).

As we intimated above, C.H.L.R. argues that it had inadequate opportunity to develop the record on this issue, because it was unaware that the issue would be decided on summary judgment. We find this argument specious. The music companies' motion for summary judgment specifically asked the court to find "defendants liable for copyright infringement" and to award "plaintiffs statutory damages of $5,000 per infringement." Plaintiffs' Motion for Summary Judgment and Permanent Injunction at 2. C.H.L.R. knew it had been denied a jury trial, so if C.H.L.R. could demonstrate no genuine question of fact on the question of liability then all that remained was for damages to be assessed by the court. C.H.L.R. admittedly had nothing to counter the evidence that unequivocally showed copyright infringements. So the only issue that remained to be decided-- and the only issue on which C.H.L.R. could even hope to demonstrate a genuine issue of material fact--was the appropriate amount of statutory damages to be assessed. We reject the contention that the District Court's decision caught C.H.L.R. unawares, but we note that Part III of this opinion renders the argument a moot point in any case.

III.

C.H.L.R. argues that the District Court erred in striking its jury demand. The court held that the relief requested--an injunction, statutory damages, and costs and attorney fees--was

-6-

equitable in nature and therefore the case would be properly decided by the court without a jury. Whether either party is entitled to a jury trial in a copyright infringement action is a question of first impression in this Circuit. See, e.g., National Football League v. McBee & Bruno's, Inc., 792 F.2d 726, 729 n.4 (8th Cir. 1986).

The answer to that question in this appeal turns on whether a request for statutory damages in a copyright infringement case entitles a party in such a case to a jury trial, either because the statute compels it or because the Constitution requires it. The statute, in pertinent part, reads:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $500 or more than $20,000 as the court considers just.

17 U.S.C. § 504(c)(1) (1994). The relevant constitutional amendment provides that "[i]n Suits at common law . . . the right of trial by jury shall be preserved." U.S. Const. amend. VII.

Our research has revealed many cases wherein the parties and the courts apparently have assumed without deciding that copyright infringement actions either are for the court without a jury, or, less frequently, are for a jury. We begin with a survey of circuit court cases that have squarely addressed the question, and examine the legal analysis, if any, employed in each.[2]

---

[2]The cases we cite throughout our opinion construe both the 1909 and 1976 versions of the Copyright Act's infringement damages statute. 17 U.S.C. § 101(b) (1976) (1909 Act); 17 U.S.C. § 504(c) (1994) (1976 Act). The relevant statutory language relied upon in the pre-1976 cases concerning the court's discretion remains essentially the same. E.g., 17 U.S.C. § 101(b) ("as to the court shall appear to be just," "the court may, in its discretion"); 17 U.S.C. § 504(c) ("as the court considers just," "the court in its

When confronted with the question in 1912, the Second Circuit said:

> [W]e do not think that by the use of the word "court" it is required that the judge acting by himself shall assess the damages when a case is presented calling for an award under the minimum damage clause.  We think it the better view that the statute permits him to direct the jury to assess the damages within the prescribed limits.

Mail & Express Co. v. Life Publishing Co., 192 F. 899, 901 (2d Cir. 1912). The court went on to say that even if its conclusion was wrong there was no error because the judge would have assessed damages anyway, given the way in which he instructed the jury.

Many years later, without reference to Mail & Express, the Second Circuit read the statute quite differently and concluded, "The determination of statutory damages, including a fivefold increase in the maximum award if the plaintiff proves and the court finds willful infringement, is assigned by statute to the judge rather than the jury." Oboler v. Goldin, 714 F.2d 211, 213 (2d Cir. 1983).  Unlike the Mail & Express court, which found the statutory language "somewhat obscure," Mail & Express, 192 F.2d at 901, the Oboler court evidently found the statute definitive and performed no constitutional analysis.

In 1957, the First Circuit decided that the entire copyright infringement case before the trial court, including the request for statutory damages, "was equitable in nature, as to which the defendant had no constitutional or statutory right to a jury

---

discretion may").  It is apparent that the 1976 Act was not intended to change this part of the statute.

trial."  Chappell & Co. v. Palermo Cafe Co., 249 F.2d 77, 79 (1st Cir. 1957).  The court, however, concluded that statutory "in lieu" damages were no different from actual damages, which the defendant "concede[d] that the district court as a court of equity would have been free to determine and award . . . as incidental to the relief by way of injunction against future infringements."  Id. at 81.  Thus the court held that the resolution of factual issues by the court hearing the equitable claim for an injunction precluded a jury trial on "the pending claim for damages," the legal claim. Id.  Since that decision, however, the Supreme Court has said "that only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims."  Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510-11 (1959) (footnote omitted).  So the First Circuit's rejection of a "distinction between a claim for actual damages from the infringement, and a claim for just damages in lieu of proof of actual damages or profits resulting from the infringement," Chappell & Co., 249 F.2d at 82, actually now supports the position that damages for copyright infringement are legal and therefore trigger the right to trial by jury, whether the damages sought are actual or statutory.

The Ninth Circuit has held that the statutory damages provision "expressly directs the court to use its discretion in the determination of `in lieu' damages."  Sid & Mary Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1177 (9th Cir. 1977) (Sneed, J., concurring, in a supplemental opinion for the court).  The court evidently did not consider that the word "court" need not refer to the judge sitting without a jury, and did no constitutional analysis.

A few years later, in a short opinion without any real analysis, the Fifth Circuit concluded, "The whole case before the Court"--which included a prayer for minimum statutory damages--"was

-9-

equitable in nature as to which the appellant had no constitutional or statutory right to a jury trial." Twentieth Century Music Corp. v. Frith, 645 F.2d 6, 7 (5th Cir. Unit B May 1981) (per curiam).

That same year, the Fourth Circuit took a different approach. That court thought the statutory language concerning the award of statutory damages, "[i]f anything, . . . enforces rather than detracts from an interpretation requiring a jury trial, but it is not sufficiently clear to mandate either a bench trial or a jury trial." Gnossos Music v. Mitken, Inc., 653 F.2d 117, 119 (4th Cir. 1981). The court therefore went on to consider the right to a jury trial under the Seventh Amendment. The court concluded that an action for copyright infringement was analogous to a common-law action for tortious interference with a property right and "is basically an action for the enforcement of a legal right." Id. at 120. The court further held that the remedy of statutory damages "is analogous to the ancient civil action for debt" and, regardless of the amount sought (within the statutory range), is "a remedy recoverable in an action at common law." Id. Thus, according to the court, the parties were entitled to a jury trial on demand. Courts within the Fourth Circuit continue to allow claims for statutory damages for copyright infringement to be tried to a jury. See Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., 74 F.3d 488, 496 (4th Cir. 1996) ("Thus, if the jury was presented with evidence justifying a finding of willful infringement, it is given broad discretion to award up to $100,000 for each work copied."), petition for cert. filed, 64 U.S.L.W. 3765 (U.S. Apr. 29, 1996) (No. 95-1765).

The Eleventh Circuit, following the Fifth (as it would) and relying upon Twentieth Century Music, held "that the latitude granted the district court's great discretion in awarding statutory damages does not entitle defendants to a jury or bench trial as to an award of damages within the statutory limits . . . provided that the parties may submit all of their supporting evidence to the

-10-

district court." Cable/Home Communication Corp. v. Network Prods., Inc., 902 F.2d 829, 853 (11th Cir. 1990) (emphasis added).

The Seventh Circuit has concluded that a party to a copyright infringement suit is entitled to a jury trial on the question of infringement, even if the only damages sought are statutory. Video Views, Inc. v. Studio 21, Ltd., 925 F.2d 1010, 1017 (7th Cir.), cert. denied, 502 U.S. 861 (1991). But, to the Seventh Circuit, it is "clear that it is for the district court and not for a jury to determine the appropriate award of statutory damages, within the limits prescribed." Id. at 1014; see also Mongram Models, Inc. v. Industro Motive Corp., 492 F.2d 1281, 1283 (6th Cir.) ("[t]he issue of infringement was submitted to a jury" but the judge determined the amount of statutory damages in Sixth Circuit case where jury-trial issue was not before the court on appeal), cert. denied, 419 U.S. 843 (1974). The Video Views court went on to explain, however, that the question of willfulness, a finding of which is required for an assessment of statutory damages outside the usual range, is for the jury along with the question of infringement. Video Views, 925 F.2d at 1017; see also Chi-Boy Music, 930 F.2d at 1227 ("district court's finding of willfulness is a factual determination").

Given the diverging opinions of our sister circuits, we now consider for ourselves whether a party is entitled to a jury trial in a copyright infringement suit when the plaintiff seeks statutory damages as a remedy.

B.

Before we address the question whether a jury trial is constitutionally required, we must consider whether Congress provided for jury trial when enacting the copyright laws. If our inquiry leads us to conclude that it did, we can and will avoid the constitutional question. Lorillard v. Pons, 434 U.S. 575, 577

-11-

(1978).

Statutory damages, within a range, are to be assessed in an amount "as the **court** considers just." 17 U.S.C. § 504(c)(1) (emphasis added). Further, if "the **court** finds" that the infringement was willful or innocent, "the **court** in its discretion" may go outside the statutory range, within certain limits, and increase or decrease the amount of statutory damages. Id. § 504(c)(2) (emphasis added). The fact that Congress gave discretion to the "court," however, does not mean that the decision on the amount of statutory damages vests automatically in the trial judge instead of a jury. See, e.g., Curtis v. Loether, 415 U.S. 189 (1974). On the other hand, although Congress obviously intended statutory damages to be an award of money, traditionally a legal remedy, see Woodell v. International Bhd. of Elec. Workers, Local 71, 502 U.S. 93, 97 (1991), the Supreme Court has not gone "so far as to say that any award of monetary relief must necessarily be `legal' relief," Curtis, 415 U.S. at 196. Thus we do not find the answer in the statute. Likewise, the legislative history of the statute is silent on the question of congressional intent to require trial by jury when statutory damages are sought in a copyright action.[3] We turn therefore to the constitutional

---

[3]The legislative history accompanying the Semiconductor Chip Protection Act of 1984, Pub. L. No. 98-620, 98 Stat. 3347 (codified as amended at 17 U.S.C. §§ 901-14) does contain this interesting statement:

> Section 911(c) provides statutory damages, **in terms generally analogous to 17 U.S.C. § 504(c)**, but the discretionary amount that can be awarded to the plaintiff is raised to $250,000. . . . In using the term "court" in Sections 911(b) and (c) it is the intent of the Committee, **as under 17 U.S.C. § 504(c)**, that there be a right to a jury where requested.

H.R. Rep. No. 781, 98th Cong., 2d Sess. 27, reprinted in 1984 U.S.C.C.A.N. 5750, 5776 (emphasis added).

This is arguably "revisionist" legislative history, is from a later Congress, and pertains to a different statute. We therefore do not rely on it.

question.

C.

"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. amend. VII.  The Supreme Court teaches that the phrase "Suits at common law" refers to those in which legal rights are sought to be adjudicated and legal remedies are imposed, as compared with those suits where the rights and the remedies are equitable.  Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41 (1989).  To resolve the question whether an action is legal or equitable, "we examine both the nature of the issues involved and the remedy sought."  Woodell, 502 U.S. at 97.  To determine the nature of the issues involved, we consider analogous "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity."  Id. (quoting Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry, 494 U.S. 558, 565 (1990)).  But the other inquiry, the legal or equitable nature of the remedy sought, ordinarily is the more important of the two, id., and certainly proves to be so in this case.

The Supreme Court has held that modern patent infringement actions derive "from the infringement actions tried at law in the 18th century, and there is no dispute that infringement cases today must be tried to a jury." Markman v. Westview Instruments, Inc., 116 S. Ct. 1384, 1389 (1996). Patent and copyright infringement actions find their constitutional derivation in the same provision, wherein Congress is delegated the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8.  The

-13-

Supreme Court treats patent and copyright the same when looking at the purposes behind the constitutional provision and the laws thereby enacted. See, e.g., Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 162 (1989) ("One of the fundamental purposes behind the Patent and Copyright Clauses of the Constitution was to promote national uniformity in the realm of intellectual property."); Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 429 (1984) ("The copyright law, like the patent statutes, makes reward to the owner a secondary consideration.") (quoting United States v. Paramount Pictures, Inc., 334 U.S. 131, 158 (1948)); Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562, 576 (1977) ("[T]he protection [afforded by state law] provides an economic incentive for [the performer] to make the investment required to produce a performance of interest to the public. This same consideration underlies the patent and copyright laws long enforced by this Court."). Moreover, the elements that must be proved for liability to attach in patent and copyright infringement cases are functionally the same. Notwithstanding the difficulty and the often "abstruse historical inquiry" required to apply the test, Ross v. Bernhard, 396 U.S. 531, 538 n.10 (1970), we think patent and copyright infringement actions are sufficiently analogous to conclude that, as patent infringement is a legal action to be tried to a jury, so is copyright infringement.

We proceed then to the related question: whether the remedy of statutory damages is legal or equitable. "The Seventh Amendment is silent on the question whether a jury must determine the remedy in a trial in which it must determine liability." Tull v. United States, 481 U.S. 412, 425-26 (1987). But if the award of statutory damages by a jury is "necessary to preserve the `substance of the common-law right of trial by jury,'" then a jury trial is constitutionally required. Id. at 426 (quoting Colgrove v. Battin, 413 U.S. 149, 157 (1973)). We hold that the assessment of damages, whether actual or statutory, is such a function and is easily performed by a jury in the ordinary copyright infringement case.

<u>Cf.</u> <u>id.</u> at 427 (holding no right to jury trial for calculation of civil penalties under the Clean Water Act where "highly discretionary calculations that take into account multiple factors are necessary" to assess the penalties, and "are the kinds of calculations traditionally performed by judges"). Statutory damages, whatever else they may be, are unquestionably money damages and, as we have noted above and as bears repeating here, the assessment of money damages by a jury is a fundamental component of common-law trial by jury. "[W]e will find an exception to the general rule and characterize damages as equitable" only if the damages sought have "the attributes" of an equitable remedy. <u>Terry</u>, 494 U.S. at 570. Consideration of such attributes convinces us that these statutory damages are legal in character.

The first attribute considered by the <u>Terry</u> Court was the restitutionary nature of the relief, "such as in `action[s] for disgorgement of improper profits'". <u>Id.</u> at 570 (quoting <u>Tull</u>, 481 U.S. at 424) (alteration in <u>Terry</u>). The Court has always spoken of the "in lieu" nature of statutory damages in copyright infringement cases. <u>See</u>, <u>e.g.</u>, <u>Douglas v. Cunningham</u>, 294 U.S. 207, 208 (1935).[4] That is, they are awarded instead of actual damages and profits, 17 U.S.C. § 504(c)(1), and so may be characterized, at least in part, as restitution. "The phraseology of the [statutory damages] section was adopted to avoid the strictness of construction incident to a law imposing penalties, and to give the owner of a copyright some recompense for injury done him, in a case where the rules of law render difficult or impossible proof of damages or discovery of profits." <u>Douglas</u>, 294 U.S. at 209. And

---

[4]Although the Court in <u>Douglas v. Cunningham</u> said that the "**trial judge** may allow such damages as he deems to be just," 294 U.S. 207, 210 (1935) (emphasis added), this was in fact a pre-merger "suit in equity," <u>id.</u> at 207, where injunctive relief and an accounting also were sought, and so the equity court heard the entire case. The question of whether the parties might have been entitled to a jury trial on demand was not an issue.

notwithstanding that the amount of statutory damages assessed may go beyond literal restitution, given that statutory damages are by definition a substitute for unproven or unprovable actual damages, statutory damages are arguably the quintessential equitable remedy, invoked when the legal remedy is inadequate. But our analysis does not end here. We next consider a more recently articulated rationale justifying the award of statutory damages in copyright infringement cases.

In a case decided since the merger of the courts of law and equity in 1938, Fed. R. Civ. P. 2, the Supreme Court has concluded that statutory damages for copyright infringement are not only "restitution of profit and reparation for injury," but also are in the nature of a penalty, "designed to discourage wrongful conduct." F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233 (1952).[5] "The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits **to sanction and vindicate the statutory policy**." Id. (emphasis added). Thus it is plain that another role has emerged for statutory damages in copyright infringement cases: that of a punitive sanction on infringers, and the award of punitive damages traditionally is a jury matter. "Remedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity." Tull, 481 U.S. at 422. Because statutory damages have evolved and now are intended not only to put the plaintiff in the position he would have been but

---

[5]We note that the Court in F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 232, 234 (1952), like the Court in Douglas, spoke of "judicial discretion" in the assessment of statutory damages for copyright infringement. We do not consider such language decisive, however, given that the question of whether statutory damages should be decided by judge or jury was not before the Court.

-16-

for the infringement, but also, and arguably preeminently, to punish the defendant (especially where, as here, the music companies had very little actual damage and C.H.L.R. reaped few profits from the infringements), we think it especially appropriate to leave the decision to the jury's "discretion and sense of justice." F.W. Woolworth Co., 344 U.S. at 232 (quoting L.A. Westermann Co. v. Dispatch Printing Co., 249 U.S. 100, 106 (1919)).

As for other equitable attributes that we might ascribe to an award of statutory damages, "a monetary award `incidental to or intertwined with injunctive relief' may be equitable."  Terry, 494 U.S. at 571 (quoting Tull, 481 U.S. at 424).  Notwithstanding that there is just one set of facts supporting the liability in this case--essential to the imposition of any remedy--the two remedies easily could have been awarded independently of one another, the injunction by the trial judge, the damages by the jury.  In that sense, the two are not intertwined.  Further, a prayer for damages in the amount of $5000 per infringement for four infringements--$20,000, a substantial amount--indicates to us that the music companies did not seek these statutory damages as "incidental" to any other relief.

Having carefully weighed the legal attributes of the statutory damages remedy against its equitable attributes, we conclude that, as is true with most money damages, statutory damages for copyright infringement are a legal remedy.

Further, we are not persuaded that Congress, by setting a range within which statutory damages are to be awarded, intended that there be no fact-finding involved in fixing a damage award within the range, nor that the fact-finding is of such difficulty

that it must be performed by the court.[6]  "[T]he law commits to the **trier of facts**, within the named limits, discretion to apply the measure furnished by the statute . . . ."  Douglas, 294 U.S. at 210 (emphasis added).  The jury is, of course, the traditional fact-finder.  C.H.L.R. has alleged facts that a jury might well find relevant in selecting a figure between $500 and $20,000--quite a wide range even in the absence of proof of willfulness or innocence.[7]  For example, C.H.L.R. makes much of its assertions that the Comedy House was not profitable when first opened, when ASCAP was pressuring it to purchase a license; that the proposed ASCAP license fee was considerably higher than that of Broadcast Music, Inc., which C.H.L.R. ultimately purchased; and that the Comedy House plays music only as filler, not as the primary source of entertainment.  A party should be entitled to have a jury make factual findings relevant to determining the amount of damages to be assessed, whether they are actual damages or statutory damages.  "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."  Beacon Theatres, 359 U.S. at 501 (quoting Dimick v. Schiedt, 293 U.S. 474, 486 (1935)).

---

[6]The Supreme Court has "identified `the practical abilities and limitations of juries' as an additional factor to be consulted in determining whether the Seventh Amendment confers a jury trial right," in addition to the nature of the cause of action and the legal or equitable nature of the remedy. Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 n.4 (1989).  We are satisfied that neither the determination of liability nor the assessment of damages in the ordinary copyright case is beyond a jury's ability.

[7]In view of our holding regarding the legal nature of statutory damages in copyright cases, it necessarily follows that the willful or innocent nature of the infringement, and the concomitant adjustment of the amount of statutory damages, also would be jury questions.

D.

We hold that either party in a copyright infringement suit is entitled under the Seventh Amendment to a jury trial on demand. Accordingly, the District Court erred in striking C.H.L.R.'s jury demand, and C.H.L.R. is entitled to a new trial, with jury, on the music companies' claim for statutory damages.

IV.

C.H.L.R. also has appealed the award of attorney fees and costs. In view of our disposition of the jury-trial issue, the award must be, and is, vacated.

V.

To sum up, the judgment of the District Court granting summary judgment on the question of C.H.L.R.'s liability for copyright infringement is affirmed. The court's decision to strike the jury demand is reversed, and the case is remanded for further proceedings on the claim for statutory damages. The award of attorney fees and costs is vacated.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.