**ALL NATIONS MUSIC, Jobete Music Co., Inc., Integrity's Hosanna Music, Joste Music d/b/a Peg Publishing, Inc., and William J. Gaither, Plaintiffs,**

v.

**CHRISTIAN FAMILY NETWORK, INC. and James L. Elsman, Defendants.**

No. 5:96–CV–204.

United States District Court, W.D. Michigan, Southern Division.

Nov. 12, 1997.

Sandra L. Jasinski, Honigman, Miller, Schwartz & Cohn, Lansing, MI, for Plaintiffs.

James L. Elsman, Jr., Birmingham, MI, for Defendants.

### OPINION AND ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

MILES, Senior District Judge.

'Thou shalt not steal.' has been an admonition followed since the dawn of civilization. Unfortunately, in the modern world of business this admonition is not always followed....

*Grand Upright Music Ltd. v. Warner Bros. Records, Inc.,* 780 F.Supp. 182, 183 (S.D.N.Y. 1991).

Defendant Christian Family Network, Inc. ("CFN") operates a commercial radio station in Battle Creek, Michigan, known by the call letters WOLY–AM, under license granted by the Federal Communications Commission. Despite describing WOLY as a "small, religious station" whose "main emphasis is on paid Ministry Programs," Answer to Complaint, ¶ s 4, 7, CFN and its president and principal stockholder, attorney James Elsman, who is also named as a defendant herein, have violated the commandment "Thou shalt not steal," as well as the copyright laws of this country. This court has no jurisdiction over the defendants' violation of the

former, but does have jurisdiction over this action arising from their violation of the law. There being no genuine question remaining that they have violated the law, the court hereby GRANTS the plaintiffs' motion for summary judgment as to liability and entitlement to injunctive relief. However, for the reasons to follow, the court holds in abeyance any ruling on the plaintiffs' motion for statutory damages and attorneys' fees and costs.

## I

The plaintiffs, who are the owners of copyrighted musical compositions, filed this action on December 12, 1996 alleging claims of copyright infringement based on WOLY's unauthorized public performances of five of their copyrighted works on August 7, 1996. In their original answer filed on January 22, 1997,[1] the defendants set an unfortunate tone for this proceeding, among other things characterizing plaintiffs' complaint as being "much ado about nothing"[2] and asserting a number of affirmative defenses, most of which being of such questionable merit that they have since been withdrawn. Now, the defendants' only defense (if it may be called that) appears to be that they were in a state of "confusion" when they stole plaintiffs' property and that they now truly want to pay for the right to play plaintiffs' songs. However, they contend, they have been stymied in their alleged attempts to do so by the true villain in this action, that "big Licensing Organization," (described as such in Defendants' Brief in Opposition to Plaintiffs' Motion for Summary Judgment, at p. 1) the American Society of Composers, Authors and Publishers ("ASCAP"), of which plaintiffs are members.[3] According to the defendants, that "big Licensing Organization" ASCAP just will not send them a current bill for fees due.

The defendants have conceded, as they must, that although they once signed a license agreement with ASCAP, they "stopped paying" license fees, *id.* at p. 3, and "no fees were paid for a few years[.]" *Id.* at p. 4. The plaintiffs have submitted, in support of their motion, evidence showing that at the relevant time the defendants were in default of their license agreement for failure to pay fees and provide required annual reports; evidence showing that plaintiffs provided defendants with estimates of the license fees owed; evidence showing that ASCAP terminated the license;[4] and evidence showing that the plaintiffs warned the defendants of their potential liability under copyright law if WOLY were to broadcast copyrighted musical compositions without permission.

The defendants have not responded to this evidence. Instead, the defendants would have the court believe that this case could be concluded if someone would just send them a

1. Although the plaintiffs were granted leave to file an amended complaint, which was docketed on May 12, 1997, the defendants have never filed an amended answer.

2. The defendant use this phrase not only in their answer but also in their brief filed in opposition to this motion.

3. ASCAP is a performing rights society, a nonexclusive licensee of the nondramatic public performance rights of its members. *Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.*, 441 U.S. 1, 5, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979). As a nonexclusive licensee, ASCAP is not a party to this action, although its actions preceding this lawsuit have some relevance to the issues presented.

At one point, the defendants apparently contemplated filing a third-party claim against ASCAP, for the defendants included with their answer a "Notice of Counterclaim" stating that "a Counterclaim is not brought at this time" but "Notice if given that a claim will be brought against A.S.C.A.P. and Plaintiffs and others[.]" However, the defendants have never sought to implead ASCAP, nor have they sought to file a counterclaim against the plaintiffs.

4. In their response brief, the defendants assert that although "no fees were paid [to ASCAP] for a few years," ASCAP did not demand payment. Defendants' Brief in Opposition at p. 4. The defendants have submitted no evidentiary support for their assertion that ASCAP did not demand payment. The defendants contend that "most of the CFN matters at Elsman's Law Office are handled by a Comptroller[.]" *Id.* However, the defendants have not provided any affidavit from the comptroller. In addition, the defendants appear to concede that CFN received a letter from ASCAP, dated January 16, 1996, indicating, among other things, that WOLY was no longer licensed. *See id.* (describing the letter as "confusing" and stating "[n]o wonder a Comptroller working for Elsman, or even Elsman, would hesitate before acting").

bill to pay.[5] The court wishes the resolution of this matter could be achieved so easily. However, the evidence shows that ASCAP repeatedly demanded payment of license fees from CFN, and that CFN was nonresponsive to these demands.

Though defendant Elsman chooses to own a radio station,[6] he claims to have "no hand in the day-to-day operations" of the station, "being a full-time lawyer." Affidavit of James Leonard Elsman ("Elsman Aff."), ¶ 2. Although Elsman assesses that his background is of "little relevance," Elsman Aff., p. 2, the court notes that his Martindale–Hubbell biography indicates that he received his J.D. from the University of Michigan and has practiced law in the Detroit metropolitan area for over 35 years. His "sophisticated" practice, which covers the state of Michigan as well as the Detroit area, consists principally of litigation and class actions. Martindale–Hubbell Law Directory, <http://lawyers.martindale.com/marhub/$. Elsman appears to have owned CFN and served as its president for approximately 10 years.

Although Elsman admits selecting WOLY's general manager, Elsman asserts that "I never select music to be played." Elsman Aff., ¶ 2. Elsman further states,

> Music is only one aspect of CFN–Woly's [sic] airtime, as national and local ministry programs take up the majority of the airtime, and such broadcasts are paid for as opposed to music, which just fills in the gaps of air-time.

*Id.*[7] The defendants admitted in their answer that WOLY is "subsidized by Elsman[.]" Answer, ¶ 5. Michigan Department of Commerce records indicate that CFN, which is (or was) the legal owner of WOLY, was incorporated in 1988 as a domestic profit corporation. Search of WESTLAW, MI–CORP Database (database updated October 26, 1997). These records also indicate that CFN is not in good standing with the state of Michigan; the corporation was automatically dissolved on July 15, 1995 for failing to file an annual report. *Id.*

## II

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty, Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the burden of establishing the non-existence of any genuine issue of material fact and may satisfy this burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). While inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion,

---

**5.** The defendants contend that they "have offered to pay" license fees, "but have been refused a bill." Defendants' Brief at p. 8; Elsman Aff., ¶ 5. However, the only evidence which they have submitted as indicative of their attempts to pay ASCAP pertains to dates well after the infringements in question. Indeed, all but one of these purported demands for a bill were made after the plaintiffs filed this action.

**6.** In an affidavit filed with the court, Elsman states that he and his wife "co-equally" own "all the stock of [CFN], which owns only the assets of one radio station, [WOLY]." Affidavit of James Leonard Elsman, ¶ 1.

**7.** This statement contrasts starkly with a statement in the defendants' brief that "ASCAP licenses are necessary to the very operation of a Christian radio station, because **music is constantly played that involves ASCAP performances.**" Defendants' Brief in Opposition at p. 7 (emphasis supplied).

That Elsman, although a principal owner of WOLY, makes no attempt to ensure that the station stays within the copyright laws is confirmed by the defendants' assertion that "Elsman would have station managers resign if he selected which tunes are to be played." Defendants' Brief in Opposition at p. 5.

"[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are "material." *Anderson,* 477 U.S. at 248.

### III

■ Chief Judge Duff's decision in *Almo Music Corp. v. 77 East Adams, Inc.* 647 F.Supp. 123, 124 (N.D.Ill.1986) sets forth the elements of copyright infringement by unauthorized public performance:

> (1) the originality and authorship of the compositions involved; (2) compliance with the formalities required to secure a copyright under Title 17, United States Code; (3) plaintiffs' ownership of the copyrights of the relevant compositions; (4) defendants' public performance of the compositions; and (5) defendants' failure to obtain permission from the plaintiffs or their representatives for such performance.

In support of their motion for summary judgment, plaintiffs have presented evidence which establishes their ownership of valid copyrights in the compositions at issue. *See* 17 U.S.C. § 410(c); *Lakedreams v. Taylor,* 932 F.2d 1103, 1108 n. 10 (5th Cir.1991) (certificate of registration constitutes prima facie evidence of the validity of copyright); *Midway Mfg. Co. v. Bandai–America, Inc.,* 546 Supp. 125, 139 (D.N.J.1982) (certificate provides prima facie evidence of originality). The defendants have presented no evidence which casts doubt on the validity of the plaintiffs' copyrights. Accordingly, the court concludes that the plaintiffs have satisfied the first three elements set forth in *Almo Music,* 647 F.Supp. at 124.

The plaintiffs have also presented evidence establishing the broadcast of their songs by WOLY. *See Meadowgreen Music Co. v. Voice in Wilderness Broadcasting, Inc.,* 789 F.Supp. 823, 825 (E.D.Tex.1992) (affidavits indicating broadcast of compositions, and identifying compositions as those in question, established public performance element).

The defendants have not contradicted this evidence. In fact, the defendants concede that CFN does not have its station logs for the time in question; thus it seems that the defendants are in no position to dispute the plaintiffs' evidence of broadcast. Defendants' Brief in Opposition at p. 2 (stating that "CFN does not keep logs for a year"). Accordingly, the court concludes that no genuine issue remains regarding whether the plaintiffs have satisfied the fourth element of infringement.

Finally, plaintiffs have presented evidence establishing that the performances of their songs by WOLY were unauthorized. The defendants have not contradicted this evidence. Although they argue that they were "licensed by ASCAP, and still claim to be licensed.[,]" Defendants' Brief in Opposition at p. 5, the only evidence submitted documenting an ASCAP license dates back to May, 1989. As noted above, the plaintiffs have presented evidence that by 1996, when WOLY performed the compositions in question, its license had been terminated.

The defendants argue that CFN stopped paying license fees to ASCAP when CFN received notice of class action litigation against ASCAP by a group of religious broadcasters. However, the defendants concede that CFN "was not an active or named party" in that class action. Defendants' Brief in Opposition at p. 3. Moreover, plaintiffs have asserted that in that class action, which was filed in the United States District Court for the Southern District of New York, although CFN was identified as one of some 300 stations represented by a committee of religious broadcasters, CFN never complied with an order entered in the case requiring the stations to pay interim license fees on a monthly basis. The defendants have not contested this assertion. Indeed, their briefing confirms that CFN not only ceased paying license fees upon receiving notice of the class action, but also that no one at CFN ever actively inquired regarding the litigation or sought to participate. *See id.* (asserting that "CFN has never been informed of any resolution .. and no Court Order was ever presented as to when CFN should begin paying and in what amounts. CFN ...

awaited the results of the suit, which never were made known to CFN"); *see also id.* at p. 4 (asserting that "Elsman does recall the Class Action Lawsuit and standing-by to find out what the lawsuit decided repayment of license fees by religious radio stations.... Elsman assumed that the court or ASCAP would notify the parties of a decision"). Given Elsman's apparent experience with class action litigation, his alleged inaction upon learning of the class action is surprising.[8] However, even if what the defendants argue is true (i.e., that they were not aware of any order establishing interim license fees), the fact remains that the evidence shows that the fees remained unpaid and the license was terminated.

■ The defendants also argue that their "good-faith claim [sic] of a license" presents a factual issue for trial. Defendants' Brief in Opposition at p. 5. However, what the defendants fail to comprehend is that the plaintiffs need not establish the defendants' willfulness in order to establish an infringing performance of a copyrighted work. Although plaintiffs have elected to recover statutory damages instead of actual damages under 17 U.S.C. § 504(c), they need not establish a willful violation of the copyright law in order to recover statutory damages. *Bourne Co. v. Speeks*, 670 F.Supp. 777, 780 (E.D.Tenn. 1987).[9] *See also Cass County Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 637 (8th Cir. 1996) ("the state of mind of the copyright infringer is of no consequence to liability.... If proved, innocence or willfulness may have a bearing on the amount of statutory damages awarded but cannot affect liability"). Accordingly, the court concludes that the plaintiffs have shown that no genuine factual issue exists with respect to the fifth and final element of infringement, and plaintiffs are entitled to a judgment of infringement as a matter of law.

*IV*

■ The defendants argue that because Elsman allegedly practices in Birmingham, Michigan, approximately 150 miles from WOLY's broadcast location in Battle Creek, and because he does not select specific music to be played on the station, he is not legally responsible for the infringements and should be dismissed as a party to this action.

This argument is meritless. In disposing of a similar argument made by the defendants in *Cass County Music*, the court stated that

> ... C.H.L.R. [the corporate defendant] and the individual defendants are liable for the copyright infringements, notwithstanding that the infringements were perpetrated by their employees and without their knowledge, because C.H.L.R. had a financial interest in the use of the copyrighted songs.... As a matter of law, based on the undisputed facts in this record, C.H.L.R.'s copyright infringements were not innocent. In fact, with the repeated notices of ongoing infringement that ASCAP gave C.H.L.R., the apparent deliberate ignorance by management of the fact that violations continued ... and the somewhat acrimonious 'course of dealing between the parties,' the music companies may have given C.H.L.R. a break by not seeking enhanced damages for willful infringement.

88 F.3d at 638 (citations omitted). CFN is the corporation which owns WOLY, and Elsman, as a shareholder and president of CFN, is liable for the infringements, notwithstanding that the infringements may have been perpetrated by an unknown disc jockey or the station manager. Because the undisputed facts establish that Elsman had a financial interest in WOLY's use of the songs at issue,

---

8. Apparently, Elsman has not to this date made inquiry regarding the status of the class action. *See* Defendants' Brief in Opposition at p. 5–6 (asserting that "[t]o date, we do not know [of] a decision" and stating that the lawsuit "may or may not be currently resolved").

9. Under 17 U.S.C. § 504(c)(1), the court may award statutory damages of not less than $500 or more than $20,000 with respect to any one work. Although 17 U.S.C. § 504(c)(2) authorizes the court to increase an award of statutory damages to a sum of not more than $100,000 where the court finds that the infringement was committed willfully (and indeed the amended complaint prays for damages of up to $100,000), plaintiffs are not, in their motion, seeking damages for willful violation under § 504(c)(2), but rather statutory damages of $4,000 for each of the five acts of infringement, or a total of $20,000.

that he could have controlled the operation of the station had he so desired, and that he turned a blind eye to what his "jocks" were doing, the court concludes that no genuine issue remains with respect to Elsman's· vicarious liability for copyright infringement.[10]

## V

The defendants contend that "counsel for Plaintiffs refused to let any Plaintiffs be deposed, despite Notice of Depositions." Defendants' Brief in Opposition, at p. 3. This appears to be their attempt to argue that the court should deny the plaintiffs' motion for summary judgment because the defendants wish to conduct additional discovery. However, pursuant to the Case Management Order entered in this action, discovery was to have been completed by not later than July 1, 1997. A review of the docket reveals no indication that the defendants ever served or filed notices of deposition. They have never sought an order compelling discovery.

Fed.R.Civ.P. 56(f) specifically addresses the situation of when affidavits are unavailable in response to a motion for summary judgment:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The defendants have not, by affidavit, indicated what they would hope to discover if they did depose the individual plaintiffs. Presumably this is because, as the record

reflects, the defendants never really desired to depose the plaintiffs at all, for if they had desired to do so they would have properly sought depositions before the discovery period expired. The defendants' assertions regarding their desire for discovery do not present a basis for denying· the plaintiffs' motion on the issue of liability for copyright infringement.

## VI

■ The plaintiffs argue that they are entitled, under 17 U.S.C. § 502(a), to an injunction prohibiting the defendants from continuing to broadcast not only their copyrighted music, but also any and all music in the ASCAP repertory. "While the issuance of an injunction is in the discretion of the court, courts have traditionally granted permanent injunctions if liability is established and a continuing threat to a copyright exists." *Swallow Turn Music v. Wilson,* 831 F.Supp. 575, 581 (E.D.Tex.1993) ·(citation omitted). The defendants' contention that "music is constantly played that involves ASCAP performances," Defendants' Brief in Opposition at p. 7, their admission that they ceased paying license fees to ASCAP, and the relatively recent filing of another action involving WOLY's alleged continued infringement of ASCAP members' copyrights[11] are all circumstances indicating that the plaintiffs are entitled to an injunction prohibiting the defendants and those acting on their behalf from causing further infringing public broadcasts of all music in the ASCAP repertory.

## VII

The plaintiffs urge the court to award statutory damages of $4,000 per infringement, for a total of $20,000, in order to deter the defendants from continuing their infringing

---

**10.** In their answer, the defendants stated that Elsman would "seek costs and fees for wrongful joinder, protected as he is by corporate limited liability." Answer, at p. 5. The court feels constrained to note that given CFN's questionable corporate status, it is by no means apparent that Elsman would be protected by the corporate form. Moreover, in discovery responses the defendants admitted that CFN maintains no corporate minute book. However, whatever CFN's status, the court holds that Elsman is as a matter of law vicariously responsible for the infringements committed by WOLY.

The defendants have described WOLY as a "loss" station. However, even if the station is operating at a loss, Elsman's admission that he subsidizes the station confirms that he had a direct financial interest in WOLY's use of the copyrighted works; simply put, this admission indicates that Elsman benefitted from CFN's failure to pay the license fees.

**11.** *See Davike Music Co. v. Christian Family Network,* No. 5:97–cv–125 (W.D.Mich., filed May 20, 1997).

conduct. However, in their answer the defendants have demanded a jury trial. Although the plaintiffs argue that the "great weight of authority supports [their] view that copyright infringement claims are purely equitable in nature and that no right to trial by jury exists[,]" Plaintiffs' Reply at p. 8, the various circuits are in conflict on this issue.[12] Given this apparent conflict, the Supreme Court has recently granted a petition for writ of certiorari in *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.,* 106 F.3d 284, 293 (9th Cir.1997), *cert. granted, Feltner v. Columbia Pictures Television, Inc.,* —— U.S. ——, 118 S.Ct. 30, 138 L.Ed.2d 1059 (1997). In granting the petition, the Court directed the parties to brief and argue the question of "[w]hether 17 U.S.C. Section 504(c) permits or requires a jury trial in actions for statutory damages for copyright infringement." —— U.S. ——, 118 S.Ct. 30, 138 L.Ed.2d 1059, 1997 WL 250506. Given the pendency of this action before the Supreme Court, the court holds in abeyance any ruling on the plaintiffs' motion with respect to statutory damages as well as attorneys' fees and costs. The parties will be invited to submit supplemental briefing on these issues after the Supreme Court rules in *Columbia Pictures Television.*

## CONCLUSION

For the foregoing reasons, the court hereby grants summary judgment in favor of plaintiffs on the issue of the defendants' liability for copyright infringement; and on the issue of plaintiffs' entitlement to injunctive relief. The court reserves any ruling on the plaintiffs' motion with respect to statutory damages and attorneys' fees and costs.

In view of the foregoing, *the court hereby adjourns the final pretrial conference set for November 13, 1997 until further notice.*

---

**12.** *Compare Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.,* 106 F.3d 284, 293 (9th Cir.1997) (holding that Seventh Amendment does not provide a right to jury trial on the issue of statutory damages because such award is equitable in nature; but citing cases holding to the contrary), *cert. granted, Feltner v. Columbia Pictures Television Inc.,* —— U.S. ——, 118 S.Ct. 30, 138 L.Ed.2d 1059 (1997) *with Cass County Music Co. v. C.H.L.R, Inc.,* 88 F.3d 635, 639–644 (8th Cir.1996) (holding that either party in a copyright infringement suit is entitled to a jury trial on demand).