**JOE HAND PROMOTIONS, INC., Plaintiff,**

v.

**BLARNEY STONE, et al., Defendants.**

**No. CIV. A. 97–3571.**

United States District Court, E.D. Pennsylvania.

March 3, 1998.

Alan Gelb, Cherry Hills, NJ, Wayne Lowstein, Ellenville, NY, Yhomas P. Riley, San Francisco, CA, for Plaintiff.

Dante W. Renzulli, Exton, PA, Robert C. Keller, Upper Darby, PA, John J.McCreesh, III, Upper Darby, PA, for Defendants.

### ORDER

KATZ, District Judge.

**AND NOW,** this 3rd day of March, 1998, upon consideration of plaintiff's Motion for Judgment as a Matter of Law, and the response thereto, it is hereby **ORDERED** that the said motion is **DENIED.**

### MEMORANDUM

Plaintiff, Joe Hand Promotions, is a promoter of boxing matches and other sports events to commercial establishments. Defendants are a number of taverns and restaurants in Delaware County. This case involved the allegedly unauthorized broadcast of a number of boxing matches on May 10, 1996 by these establishments. The jury in this matter entered a verdict for defendants, and plaintiff now moves for judgment as a matter of law, or, in the alternative, for a new trial. Plaintiff argues: 1) that the jury had no basis to decide for the defendants; and 2) that this trial should not have been a jury trial, but a non-jury trial. The court rejects both of plaintiff's arguments.[1]

---

1. A motion for judgment as a matter of law should be granted: "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability. In determining whether the evidence is sufficient to

■ First, the jury had an adequate basis for its verdict. Plaintiff's case consisted of affidavits and testimony by persons working for a private investigation firm, but who were, for the most part, not private investigators themselves. The affidavits and testimony presented by plaintiff presented a number of contradictions. Some investigators claimed to have entered and left bars at times that did not correspond to the times of the rounds or the appropriate boxing match on the card. A number of the affidavits stated that "HBO, Channel 14" was visible in the bar, but on the stand, the investigators stated that they did not actually see the channel on the television, but presumed that it was Channel 14 and wrote that down in their notes, or indicated that the information was added later on by the person who typed up the affidavits. One investigator, Tina Micheledis, insisted that she had seen "Channel 14" on display in the bars in which she visited, but these particular bars were in Philadelphia, for which the appropriate station number for HBO is not Channel 14. The testimony of investigators conflicted as to when, where, and how they met and organized their activities for the evening, and when they signed their affidavits. Most of the investigators did not testify as to what particular technology was used by the bars and restaurants to intercept the fights they claimed to have seen, such as satellite dishes or cable boxes, and a number of the affidavits did not provide this information.

Further testimony elicited on cross-examination and presented by defendants created further issues of fact and credibility for the jury involving whether the fight was shown by the defendant establishments. A number of investigators claimed to have seen bartenders in their affidavits and their testimony that defendants claimed were not employed by their bars. These establishments are owned by families or sole proprietors, and have small payrolls; the bartenders on the stand claimed to have worked regular schedules on particular nights, and that they had not deviated from those schedules. Some investigators claimed to have seen female bartenders, when the bars claimed to have a male bartender on duty that night, or described a male bartender, when a female bartender was the bartender. on duty, or a white female bartender when the bartender on duty was a black female. Other bartenders and bar owners testified that the entertainment offered for the evening was a band, a jukebox, or exotic dancing, and that the TV's were usually not turned on during such events, and were not turned on that evening. The bartender who was on duty at Lou Turk's, an exotic dancing establishment, testified that although she has been a longtime weekend bartender at the club, she does not know how to turn on the establishment's large screen television, and that the television was not on while she was working on Friday nights. Other defendants questioned the description of the physical layout of the bars set forth in the affidavits and indicated that the investigator may have visited a different bar than the one they owned and operated.

The contradictory and incomplete evidence offered by plaintiff, when combined with the factual issues and credibility issues raised by defendants through cross-examination and in the testimony of their witnesses, when evaluated under the standard mandated by Rule 50(b), indicate that the jury had an adequate basis for the verdict they rendered, and the court will not disturb that just verdict.

■ Plaintiff also contends that the trial should have been a non-jury trial, and that 47 U.S.C. § 605 does not include a right to jury trial. The test for whether the Seventh

---

sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. Although judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability. The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube, Inc. v.* *Witco Corp.,* 4 F.3d 1153, 1166 (3d Cir.1993). The decision whether to grant a new trial is a matter for the court's discretion. *Wagner v. Fair Acres Geriatric Center,* 49 F.3d 1002, 1017 (3d Cir.1995). A district court ought to grant a new trial on the basis that the verdict was against the weight of the evidence only if a miscarriage of justice would result if the verdict were to stand. *See Klein v. Hollings,* 992 F.2d 1285, 1290 (3d Cir.1993)

Amendment requires a jury trial is set forth in *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). First, the court must look to the statute and to the legislative history to see if there is any legislative intent to grant a jury trial. *Id.* at 412 n. 3. The statutory language and the legislative history of 47 U.S.C. § 605 do not indicate a particular right to jury trial, or a prohibition against a jury trial. The statute allows for injunctive relief, and states what "the court" should do, but the use of the word "court" is not necessarily controlling in a statute with regard to a right to jury trial. *See, e.g., Storer Cable Communications v. Joe's Place,* 819 F.Supp. 593, 595 (W.D.Ky. 1993); *see also Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). The legislative history is also somewhat sketchy; it discusses technological problems, or amend enforcement mechanisms without giving an indication of a particular legislative intent. *See, e.g.,* H.R.100–998, 1988 U.S.C.C.A.N. 5577.

Since the statutory scheme is unavailing, the next approach to analysis of the question is to: 1) compare the statutory action to the actions brought in the courts of England in 1791; and 2) examine the remedy sought and to determine if it is legal or equitable in nature. *See Tull,* 481 U.S. at 417–18. The characterization of the relief sought is more important than finding a precisely analogous common law action. *Id.* at 421. The lawyers have not offered up any analogies, but the court finds persuasive the analogy of tortious interference with a property right. *See General Instrument Corp. v. Nu–Tek Electronics,* Civ. A. No. 95–3854, 1996 WL 184794 (E.D.Pa. April 12, 1996).

As for the characterization of the relief sought, the *Storer* court found that the remedy under § 605 was more akin to restitution, and found that to be an equitable remedy. *Storer,* 819 F.Supp. at 597. This characterization has been disputed in this District with regard to another statute, 47 U.S.C. § 553, which punishes cable piracy and provides a similar scheme of remedies. *See General Instrument,* 1996 WL 184794 at *3. The *General Instrument* court stated that the relief sought under § 553 was more aptly described as a means to punish willful violations of the statute, rather than a remedy that forced a defendant to produce any "unjust enrichment," and thus was not an equitable remedy. *See id.* The court finds the *General Instrument* characterization to be more persuasive.

*Tull* also directs this court toward characterizing the remedy sought by plaintiff as legal rather than equitable. *Tull* indicates that a civil penalty was a type of remedy that could only be enforced in the courts of law, and that an emphasis on retribution and deterrence in the legislative history would point toward a legal characterization of the remedy sought. *See Tull,* 481 U.S. at 423–25. However, the *Tull* court also found that the legislative history of the statute in question in the case (The Clean Water Act) indicated that the court was intended to assess civil penalties, so the final directive was that a jury should make a finding of liability, and then the a court should assess the penalties at issue. *See id.* at 425–26; *but see Klinger v. State Farm Mut. Auto. Ins. Co.,* 115 F.3d 230, 235–36 (3d Cir.1997) (finding *Tull* inapposite to a punitive damages remedy in a bad faith action). Relatively recent legislative history amending 46 U.S.C. § 605 indicates an interest in deterrence and punishment of piracy of satellite cable programming but offers no guidance as to whether judge or jury should make a particular determination. *See* H.R. 100–887, 1988 U.S.C.C.A.N. 5577, 5642–43, 5657. This would apparently point toward a characterization of the remedies involved as legal, if the court is to use a *Tull*-style analysis.

Case law on this question is slight at best. The court does find some guidance available in cases involving copyright infringement in the Courts of Appeals, as that statute offers a plaintiff an election of actual or statutory damages for infringement. Perhaps not surprisingly, the Courts of Appeals diverge on this question, so the guidance available may be that the question is an open one. The Ninth Circuit looked to the language of the statute, which apparently pointed to judicial discretion in fixing damages, and to its characterization of the remedy of statutory damages as an equitable one, to find that there was no right to jury trial in a case involving a demand for statutory damages. *See Colum-*

*bia Pictures Television v. Krypton Broadcasting,* 106 F.3d 284, 293–94 (9th Cir.1997). By contrast, the Eight Circuit found that a right to a jury trial does exist when statutory damages are requested in a copyright infringement suit, and the court focussed on the punitive purpose of statutory damages in such a suit in reaching its conclusion. *See Cass County Music Co. v. C.H.L.R., Inc.,* 88 F.3d 635, 642–43 (8th Cir.1996). This question is currently before the Supreme Court. *See Columbia Pictures Television v. Krypton Broadcasting,* 106 F.3d 284, 292–94 (9th Cir. 1997), *cert. granted,* —— U.S. ——, 118 S.Ct. 30, 138 L.Ed.2d 1059 (Sept. 29, 1997).

The court believed, and believes, that a jury trial on the issues presented was appropriate, given that what little legislative history exists indicates an intent to punish or deter various forms of piracy, and that determining statutory damages does not appear to be a task beyond the reach of the jury. *See Cass,* 88 F.3d at 643–44.