**SUPERHYPE PUBLISHING, INC., et al., Plaintiffs,**

v.

**Demetrios VASILIOU, Defendant.**

**FUNKY METAL MUSIC, et al., Plaintiffs,**

v.

**Demetrios VASILIOU, Defendant.**

**Nos. C–1–91–767, C–1–93–0181.**

United States District Court, S.D. Ohio, W.D.

Sept. 16, 1993.

---

Jeffrey Francis Peck, Thompson, Hine & Flory, Cincinnati, OH, for plaintiffs.

Arthur P. Anninos, Cincinnati, OH, for defendant.

*ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ORDERING INJUNCTION, DAMAGES AND ATTORNEY'S FEES*

SPIEGEL, District Judge.

This matter is before the court on the Plaintiffs' Motion for Summary Judgment

(doc. 19), the Defendant's Motion for Summary Judgment (doc. 22), and the Plaintiffs' Reply Memorandum (doc. 23).

## BACKGROUND

The Plaintiffs in this case are owners of the copyrights on original musical compositions and are represented by the American Society of Composers, Authors and Publishers (ASCAP). ASCAP was organized by composers as a means of enforcing their rights under the Copyright Act. *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 4–5, 99 S.Ct. 1551, 1554–55, 60 L.Ed.2d 1 (1978). Because musical performances are so widespread and fleeting, it was impossible for many individual composers to negotiate licenses with users and to detect unauthorized uses. *Id.* at 5, 99 S.Ct. at 1555. ASCAP was organized as a clearing house for copyright owners and users to solve these problems. *Id.* For a modest fee, users can obtain a license from ASCAP to perform the millions of titles in their catalogue.

The Defendant, Demetrios Vasiliou owned and operated the "Golden Nugget", a bar and an adjoining restaurant, "Demetrios III", on Queen City Avenue in Cincinnati, Ohio. Musical entertainment was provided at the Golden Nugget, both through recordings and live performances. ASCAP made repeated attempts to inform the Defendant of the Society's rights under the copyright laws and to induce the Defendant to accept a licensing agreement. Between May 1, 1991 and February 7, 1991, ASCAP representatives had attempted at least thirty times, through telephone contacts, correspondence and personal visits to offer the Defendant a license to use their copyrighted musical materials. The Plaintiffs' claim that the annual licensing fee for the Golden Nugget would have been $649.00. Mr. Vasiliou ignored the requests.

On the evening of June 28 and the early hours of June 29, 1991, two agents from ASCAP visited the Golden Nugget. They observed a band playing and heard four songs to which the Plaintiffs own the copyrights: "Immigrant Song," "Youth Gone Wild," "Sweet Child O'Mine," and "More Than Words." A lawsuit was filed November 1, 1991, in federal court (*Superhype v. Vasiliou*, 838 F.Supp. 1220, No. C–1–91–767). On February 8–9, 1992, over a month after the filing of that lawsuit, the same agents returned to the Golden Nugget and observed that musical performances continued to be offered to the public and heard the performance of two more ASCAP songs: "Get the Funk Out," and "Enter Sandman." In response a second lawsuit was filed in federal court (*Funky Metal Music v. Vasiliou*, 838 F.Supp. 1220, No. C–1–93–0181). The two suits are now consolidated in the instant case.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "... genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. at 2551–52; *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *Guarino*, 980 F.2d at 405.

As the Supreme Court stated in *Celotex*, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106

S.Ct. at 2553; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *Inter–Royal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).

## ANALYSIS

### A. Infringement

■ The Constitution grants "for Limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries; ..." *U.S. Const.* art. I, § 8, cl. 8. The wisdom of the Founding Fathers is manifest in the flowering of art and invention in this country. Congress has embodied the protections granted to authors under the Constitution in the Copyright Act, Title 17 of the United States Code. Under the Act, anyone who violates the exclusive rights of a copyright owner is an infringer of the copyright and the owner is entitled to institute an action in federal court. 17 U.S.C. § 501(a), (b).

■ To establish a *prima facie* case of copyright infringement by public performance of a musical work the plaintiff must prove: (1) the originality and authorship of the compositions; (2) compliance with the formalities of the Copyright Act to secure a valid copyright; (3) the plaintiff's ownership of the copyright at issue; (4) the defendant's public performance of the compositions; and (5) defendant's failure to obtain permission from the copyright owner for such performances. *Almo Music Corp. v. 77 East*

*Adams, Inc.,* 647 F.Supp. 123, 124 (N.D.Ill. 1986); *Van Halen Music v. Palmer,* 626 F.Supp. 1163, 1164–65 (W.D.Ark.1986); *see also Quartet Music v. Kissimee Broadcasting, Inc.,* 795 F.Supp. 1100, 1102 (concurring but omitting the need for the fifth element).

■ The Plaintiffs have proved their case for copyright infringement to the satisfaction of the Court. They have presented certificates of copyright registration for the six musical composition at issue in this case. See Plaintiffs' Motion for Summary Judgment, Doc. 19, Exhibit 1. These certificates constitute *prima facie* evidence of originality, authorship, and compliance with statutory formalities. *See Broadcast Music, Inc. v. Moor–Law, Inc.,* 484 F.Supp. 357, 362 (D.Del.1980). The certificates also establish the Plaintiffs' ownership rights. *See* 17 U.S.C. § 410(c). The fact that the performances occurred at the Golden Nugget, without permission from the Plaintiffs is not disputed by the Defendant. Therefore, Plaintiffs have established each of the elements of their *prima facie* case that Defendant infringed their musical copyrights.

### B. Defenses

The Defendant has made no attempt to rebut the Plaintiffs' case for copyright infringement but denies personal liability based on two arguments: first, that the infringing performances were not authorized by the Defendant and, second, that he no longer owns the Golden Nugget.

#### 1. Performances Not Authorized

The Defendant bases his central argument against liability on agency law. He argues that the performances were the unapproved acts of agents, beyond the scope of their employment. He contends that the infringing musical performances were contracted by his son, John Vasiliou with the Defendant's nephew, Danny Sideris, who represented the band which played at the Golden Nugget. The thrust of Defendant's Motion For Summary Judgment is that "Mr. Vasiliou ... is not amenable to judgment against him because the performances complained of were contracted without his authorization and consent and against his wishes, ..." See De-

fendant's Motion for Summary Judgment at 2.

■■ Though an employer can surely be liable for acts of infringement committed by an employee under the doctrine of *responde- at superior*, the courts have created a much broader umbrella of liability for owners and managers of nightclubs. *See Shapiro, Bern- stein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2nd. 1963). This theory of vicarious liability has been articulated by the Eighth Circuit:

> The prerequisites for vicarious liability for copyright infringements are:
> 1. The right and ability to supervise the infringing activity; and
> 2. An obvious and direct financial inter- est in exploitation of copyrighted materi- als.

*RCA/Ariola Int'l, Inc. v. Thomas & Gray- ston Co.*, 845 F.2d 773, 781 (8th Cir.1988); *accord Sygma Photo News, Inc. v. High Soc'y Magazine*, 778 F.2d 89, 93 (2nd Cir. 1985) (holding that "[a]ll persons and corpo- rations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright in- fringers"). The Defendant has admitted that he was the "sole owner" and was "responsi- ble for the operations and maintenance" of the Golden Nugget. See Deposition of Dem- etrios Vasiliou at 9. He also testified that he was aware that bands and disk jockeys played there. *Id.* at 10. The Defendant, therefore, meets both prongs of the *RCA* test for vicarious liability for copyright infringe- ment.

■■ In his Motion for Summary Judgment the Defendant asserts that "the perfor- mances lacked Mr. Vasiliou's knowledge and consent." *See* Defendant's Motion for Sum- mary Judgment, Doc. 19 at 4. It is difficult, in light of Defendant's deposition testimony, to accept this argument. However, in copy- right cases, neither knowledge of, nor specif- ic consent with regard to, infringement is absolutely necessary for personal liability.

Defendants who employ the services of an infringing individual, who have a right to supervise the employee's activities, and who have a financial interest in the infringing activity can be held liable, even if they were actually ignorant of the infringement. *Southern Bell Tel. and Tel. Co. v. Associated Telephone Directory Publishers*, 756 F.2d 801, 811 (11th Cir.1985); *accord Southern Nights Music Co. v. Moses*, 669 F.Supp. 305, 306 (C.D.Cal.1987) (holding that the propri- etor of a country and western nightclub "is liable for the performance of copyrighted works even if the copyrighted works are performed in direct contravention to the spe- cific instructions of the proprietor"). For example, a nightclub manager who instructs musical groups not to play copyrighted music and then claims ignorance as to their pro- gram is still deemed liable for the perfor- mance if he allowed the musicians discretion to select the program. *Warner Bros., Inc. v. Lobster Pot, Inc.*, 582 F.Supp. 478, 481–82 (N.D.Ohio 1984). Consequently, the Defen- dant cannot escape liability for copyright in- fringement in the Golden Nugget by looking the other way.

### B. Sale of the Golden Nugget

■■ Defendant also argues that the Plain- tiffs' request for injunctive relief is moot, because the Defendant has sold the Golden Nugget.[1] See Defendant's Motion for Sum- mary Judgment at 1. In support of this contention, the Defendant offers a "Contract to Purchase" dated Nov. 17, 1992, attached as an exhibit to his Motion for Summary Judgment. The Court notes that this was long after the copyright infringements at is- sue took place. In addition, the contract to purchase contains no closing date and is con- tingent upon the transfer of a liquor license to the buyer. The Defendant has offered no evidence that this sale was ever consummat- ed. Furthermore, Plaintiffs have offered evi- dence that on April 27, 1993, the Ohio De- partment of Liquor Control confirmed that

---

1. The Defendant's actual motion reads: "The defendant herein moves this Court for an Order entering Summary Judgment in his favor and against all defendants [sic] on the ground that the request by the defendants [sic] for injunctive

relief is moot." We can only assume that the Defendant actually intends that its motion for summary judgment be granted against the Plain- tiffs.

the Defendant was still listed on the liquor license of the Golden Nugget. Therefore, the record would indicate that the Defendant remains the owner of the Golden Nugget. Even if the sale in fact has been completed, the Defendant's long history of infringement and the interrelationship of Defendant's restaurant with the Golden Nugget makes the issuance of injunctive relief reasonable.

### INJUNCTIVE RELIEF

■■■■ The Copyright Act grants the Court broad powers to enjoin infringement. The Act provides in pertinent part, that

[a]ny court having jurisdiction of a civil action arising under this title may, ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

17 U.S.C. § 502(a). A showing of past infringement and a substantial likelihood of future infringement entitles a copyright owner to permanent injunction. *Pacific and Southern Co., Inc. v. Duncan,* 744 F.2d 1490, 1499 (11 Cir.1984), *cert. denied* 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985); *see also National Football League v. McBee & Bruno's, Inc.,* 792 F.2d 726, 729 (8th Cir. 1986) (holding that if infringement is for commercial gain, likelihood of future harm is presumed). ASCAP has demonstrated that they have repeatedly asserted their rights and were repeatedly ignored. Finally, the fact that the Defendant continued to infringe after the Plaintiffs filed a federal lawsuit indicates a clear danger of future infringement. Therefore, an injunction is certainly appropriate in this case.

### DAMAGES

■■■■ In drafting the copyright statutes, Congress has created a statutory framework which provides the Court with a broad latitude to exercise its discretion in awarding damages. *See* 17 U.S.C. § 504(c). Statutory damages may be awarded when the Court considers ordinary damages to be insufficient to compensate the plaintiff. *Blackman v. Hustler Magazine, Inc.,* 800 F.2d 1160, 1163 (D.C.Cir.1986). Further, the Supreme Court has held that statutory dam-

ages may have a deterrent as well as a compensatory purpose.

[A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanctions and vindicate the statutory policy.

*F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952); *accord Chi–Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1229 (7th Cir.1991).

■■■■ Under 17 U.S.C. § 504(c)(1) the Court may award statutory damages of no less than $500 and no more than $20,000 per any one infringement on any one copyrighted work. Under § 504(c)(2), where the copyright owner sustains the burden of proving willful infringement, the Court may increase the award to $100,000 per occurrence. The Defendant's knowledge that his actions constitute copyright infringement establishes the "willful" element under the statute and justifies the enhanced statutory damages. *Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co., Inc.,* 807 F.2d 1110, 1115 (2nd Cir.1986). For a modest price, the Defendant could have received a license from ASCAP to perform copyrighted music. Instead, he ignored the Plaintiffs' offers and continued to allow infringing performances of copyrighted material, even after he was sued by the Plaintiffs. Consequently, statutory damages are appropriate in this case.

### ATTORNEY'S FEES

■■■■ The Copyright Act specifically allows the Court in its discretion to award recovery of full costs including reasonable

attorney's fees. 17 U.S.C. § 505. Attorney's fees may be awarded in infringement actions to make the party whole, but also, to encourage assertion of colorable copyright claims and to deter infringement. *Chi–Boy,* 930 F.2d at 1230. For all these purposes, the Court awards attorneys fees to the Plaintiffs.

## CONCLUSION

Accordingly, the Court finds that there are no genuine issues of material fact and upon careful consideration of the questions of law, the Court hereby GRANTS Plaintiffs' Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment. Therefore, the Court permanently ENJOINS the Defendant, Demetrios Vasiliou, and all persons acting under his direction, control, permission or authority, from publicly performing the cited compositions and from causing or permitting these compositions to be publicly performed in the Defendant's bar, the Golden Nugget, or in any place owned, controlled or conducted by the Defendant, and from aiding or abetting the public performance of such compositions there or in other such place.

Furthermore, the Court ORDERS the Defendant to pay to the Plaintiffs in the original litigation, Superhype Publishing, Inc., Funky Metal Music, Guns N' Roses Music and New Jersey Underground Music, Inc. statutory damages of $1,500 each for copyright violations on June 28–29, 1991 and to pay the Plaintiffs in the second litigation, Funky Metal Music and Creeping Death Music, statutory damages of $2,500 each for copyright violations on February 8–9, 1992. Finally, the Court ORDERS the Defendant to pay the Plaintiffs' attorney's fees of $7,612.50 and disbursements of $1,021.66 for a total of $8,634.16.

SO ORDERED.