**JOBETE MUSIC CO., INC.,**
**et al., Plaintiffs,**

**v.**

**JOHNSON COMMUNICATIONS,**
**INC., et al., Defendants.**

**No. C–3–01–434.**

United States District Court,
S.D. Ohio,
Western Division.

Aug. 12, 2003.

---

Daniel Oliver Berger, Kimberly E. Ramundo, Thompson, Hine, & Flory–1, Jeffrey Francis Peck, Ulmer & Berne LLP–1, Cincinnati, OH, for Plaintiffs.

Walter Reynolds, Porter Wright Morris & Arthur–3, Dayton, OH, for DefendantS.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (DOC. # 33); CONFERENCE CALL SET

RICE, Chief Judge.

Plaintiffs, who are owners of copyrights in various musical selections, bring the instant lawsuit against Defendants Johnson Communications, Inc. ("JCI"), and Mr. James W. Johnson, Jr. ("Johnson"), for copyright infringement. JCI is in the business of operating a commercial radio station in Dayton, Ohio, known by the call letters "WDAO." Johnson is the President, General Manager and majority owner of JCI, with primary responsibility for the control, management, operation and maintenance of its affairs.

Beginning in 1988, Defendants were treated as if they held a license by the American Society of Composers, Authors and Publishers ("ASCAP"), the performing rights licensing organization of which all Plaintiffs are members.[1] That *de facto*

---

1. The following factual allegations are taken from Plaintiffs' Complaint (Doc. # 1). The Court notes, however, the Defendants have not disputed them in their response to Plaintiffs' Motion for Summary Judgment (Doc. # 35). In its analysis of Plaintiffs' Motion (Doc. # 33), the Court will discuss these and additional pertinent facts, construing them in the light most favorable to Defendants, the non-moving parties.

licensing arrangement authorized the public performance of any or all of the hundreds of thousands of copyrighted musical compositions in the ASCAP repertory, provided that Defendants complied with the reporting and payment provisions of the license. Defendants, however, defaulted on the payment of license fees to ASCAP and, consequently, on March 23, 1993, ASCAP terminated the *de facto* licensing arrangement. Defendants have not obtained a subsequent license. Despite repeated reminders of their liability under copyright laws,[2] they allegedly have continued to perform copyrighted music in the ASCAP repertory without permission. In mid-January, 2001, Defendants allegedly aired, without permission, five compositions for which Plaintiffs have copyrights. On October 23, 2001, Plaintiffs initiated the instant litigation, alleging five counts of copyright infringement. On August 15, 2002, Plaintiffs filed an Amended Complaint (Doc. # 27), which added one additional count of infringement, based on the airing of the composition, "Always & Forever," and joined Rod Temperton (dba RodSongs) as a party-plaintiff.

Pending before the Court is Plaintiffs' Motion for Summary Judgment (Doc. # 33). For the reasons assigned, their Motion is SUSTAINED in PART and OVERRULED in PART.

I. *Standards Governing Plaintiffs' Motion for Summary Judgment (Doc. # 33)*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991)(The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.")(quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a

**2.** Members of ASCAP previously filed a copyright infringement action in this Court against Defendants, Case No. C–3–94–255. Plaintiffs received a default judgment against Defen-

dants (Doc. # 9) (Beckwith, J.). The judgment was fully satisfied and released on September 11, 2000 (Doc. # 11).

matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

 Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 486, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994)("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. Merits of Plaintiffs' Motion for Summary Judgment (Doc. # 33)

In their Motion, Plaintiffs assert that they are entitled to summary judgment on the issue of Defendants' liability as copyright infringers, and, therefore, that they are further entitled to statutory damages, a permanent injunction, attorney fees and costs. In response, Defendants do not argue that their conduct did not constitute copyright infringement.[3] Rather, they

---

**3.** Although Defendants have not contested liability, they have not conceded it (Doc. # 35 at

6, n. 4). They state: "Because Defendants'

contest the amount of damages that Plaintiffs seek for the alleged infringement, and they assert that an award of attorney fees is inappropriate. As a means of analysis, the Court will begin with the threshold issue of Defendants' alleged liability for copyright infringement, following which it will discuss Plaintiffs' requests for relief.

### A. *Liability for Copyright Infringement by Defendants*

▮ "Copyright protects the expressions of ideas, but not the ideas themselves or general concepts." *Smith v. Muscle Shoals Sounds*, 2002 WL 31770324 (6th Cir. Dec.9, 2002). To establish a claim for copyright infringement of a musical work by means of public performance, a claimant must prove: (1) the originality and authorship of a composition; (2) a valid copyright under the formalities of the Copyright Act; (3) claimant's ownership of the copyright at issue; (4) defendant's public performance of the composition; and (5) defendant's failure to obtain permission from the claimant for such performance. *Varry White Music v. Banana Joe's of Akron, Inc.*, 2002 WL 32026609 (N.D.Ohio Oct.28, 2002); *Superhype Pub., Inc. v. Vasiliou*, 838 F.Supp. 1220, 1224 (S.D.Ohio 1993); *see also Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Coles v. Wonder*, 283 F.3d 798 (6th Cir.2002).

▮ To establish their ownership of valid copyrights, *i.e.*, the first three elements above, Plaintiffs have submitted the affidavit of Ms. Mary Jenkins, the ASCAP employee in charge of maintaining pertinent copyright records (Doc. # 33, Ex. 1). Ms. Jenkins' duties include maintaining photocopies of original copyright certificates, as-

signments, certificates of mergers and amendments of corporate charters, and all other documents proving the chain of title of copyright ownership for each of more than 7,800 songs which have been the subject of copyright infringement actions (*Id.* ¶ 1). A separate file is maintained for each song (*id.*). Attached to Ms. Jenkins' affidavit and authenticated by her are copies of the copyright certificates, assignments, notices of termination, merger certificates and other documents indicating the chain of title of ownership for each of the songs at issue in this litigation (*Id.*, Ex. 1A–E). "A copyright certificate is *prima facie* evidence of the first three elements for an infringement claim." 17 U.S.C. § 410(c). Defendants have not disputed this evidence, nor have they otherwise created a genuine issue of material fact regarding Plaintiffs' ownership of valid copyrights in the songs at issue in this litigation. Thus, upon review of Plaintiffs' uncontroverted evidence, Plaintiffs have established their ownership of valid copyrights in these six songs.

▮ Turning to the fourth element of an infringement claim, *i.e.*, Defendants' public performance of the composition, Plaintiffs have provided evidence of Defendants' wrongful performances by way of the affidavits of Mr. Jim Ray (Doc. # 33, Ex. 4) and Mr. Oleksander Kuzyszyn (Doc. # 33, Ex. 5). In his affidavit, Mr. Ray states that, on two separate occasions, he was engaged by ASCAP to make tape recordings of the broadcasts of radio station WDAO. Pursuant to his instructions, he recorded the broadcasts from WDAO for varying lengths of time on January 15–17, 2001. At the same time as the recordings were made, he prepared a log of the sta-

primary defense to this lawsuit is the unreasonableness of Plaintiffs' demands, this memorandum assumes, *arguendo*, that the Plaintiffs have established their *prima facie* case for

copyright infringement, but such an assumption is not meant to be interpreted as an admission." (*id.*)

tion's broadcasts. The recordings and the logs were labeled and mailed to ASCAP's offices in New York. Mr. Ray followed the same procedures on May 13–15, 2001, when he was again engaged to make tape recordings of WDAO's broadcasts. (Ex. 4). Mr. Kuzyszyn, a professional musician who is employed by ASCAP in its Radio, Internet and Other Surveys Department, reviewed the two sets of recordings provided by Mr. Ray. Mr. Kuzyszyn avers that the songs, "Happy Birthday," "I Wanna Know," "Sarah Sarah," "I Only Have Eyes For You," "This Will Be (An Everlasting Love)," and "Always and Forever," are on the tape recordings of WDAO's broadcasts made by Mr. Ray in January and May of 2001. Again, Defendants have not provided contradictory evidence. Accordingly, Plaintiffs have established that WDAO publicly performed their copyrighted works.

Finally, Defendants admit that they did not have a ASCAP license to broadcast the copyrighted music on the dates in question. Accordingly, there is no genuine issue of material fact regarding the fifth element of copyright infringement, i.e., that Defendants failed to obtain permission for the performances.

■ Although the musical selections were broadcast by JCI, Plaintiffs have asserted that Defendant Johnson should be held jointly liable for the wrongful performances. As discussed in this Court's Decision of August 27, 2002 (Doc. # 30), "[c]opyright infringement is a tort, for which all who participate in the infringement are jointly and severally liable." *Realsongs v. Gulf Broadcasting Corp.*, 824 F.Supp. 89, 91 (M.D.La.1993). In *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984), the Supreme Court observed that

> [t]he Copyright Act does not expressly render anyone liable for infringement committed by another.... [But] vicarious liability is imposed in virtually all areas of the law, and the concept of contributory infringement is merely a species of the broader of the problem of identifying the circumstances in which it is just to hold one individual accountable for the actions of another.

*Id.* at 434–435, 104 S.Ct. 774. Courts within virtually every circuit have adopted a two-prong test to determine whether a corporate officer is jointly and severally liable with the corporation for copyright infringement. The prerequisites for vicarious liability are: (1) the officer has the right and ability to supervise the infringing activity, and (2) the officer has a direct financial interest in such activities. *E.g., Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Ass'n*, 554 F.2d 1213, 1215 (1st Cir.1977); *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir.1963); *Nelson–Salabes, Inc. v. Morningside Development, LLC*, 284 F.3d 505, 513 (4th Cir.2002); *RCA/Ariola Internat'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773 (8th Cir.1988); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir.2001). This test has been adopted by courts throughout the Sixth Circuit. *Vasiliou*, 838 F.Supp. at 1225 ("The prerequisites for vicarious liability for copyright infringements are: (1) The right and ability to supervise the infringing activity; and (2) An obvious and direct financial interest in exploitation of copyrighted materials."); *All Nations Music v. Christian Family Network*, 989 F.Supp. 863 (W.D.Mich.1997); *Mallven Music v.2001 VIP of Lexington, Inc.*, 1986 WL 10704 (E.D.Ky. Apr.24, 1986); *Rodgers v. Quests, Inc.*, 1981 WL 1391 (N.D.Ohio Oct.30, 1981); *see also Sailor Music v. IML Corp.*, 867 F.Supp. 565, 568–69 (E.D.Mich.1994). Thus, under this standard, liability for copyright infringement is not limited to those individuals

who directly engage in infringing activity. Rather, individuals, such as Defendant Johnson, may be held vicariously liable when they have the right and ability to supervise the infringing activity and have a financial interest in the exploitation of copyrighted materials.

In support of their assertion that Johnson should be held liable for the alleged infringement herein, Plaintiffs note that he is President, General Manager and majority owner of JCI (Johnson Depo. at 10, 31). Johnson's duties and responsibilities as General Manager of the station include supervising the station staff (*id.* at 22–23). Johnson indicated that station employees report to the Department Heads, and these supervisors, including the Program and Music Director, who is responsible for selecting the programming for the station, report to him (*id.* at 23). As General Manager, Johnson also prepares the budget, enters into leases and private licensing agreements (*i.e.*, agreements with ASCAP, BMI, or SESAC), and handles FCC licensing issues (*id.* at 22, 33). Defendants have not provided any contradictory evidence.[4] Construing the

evidence in the light most favorable to Johnson, Plaintiffs have established that he derived a financial benefit from the radio station's activities and that he was in a position to supervise and to control the activities of its personnel. Accordingly, Johnson, in addition to JCI, is liable for the alleged infringing activities.

In summary, Plaintiffs have provided uncontroverted evidence concerning each element of their copyright infringement claims based on the public performance of their musical compositions, and Defendants have failed to create a genuine issue of material fact on each of these elements. Accordingly, Plaintiffs are entitled to summary judgment against both Defendants on their copyright infringement claims.

### B. *Plaintiffs' Requests for Relief for Defendants' Copyright Infringement*

In their Amended Complaint, Plaintiffs have sought statutory damages in an amount between $750 and $150,000 for each cause of action, as well as attorneys fees and costs. In their Motion, Plaintiffs have requested $25,000 per infringement

---

4. In support of his Motion for Summary Judgment (Doc. # 12), Johnson submitted an affidavit in which he stated that he did not personally direct anyone at JCI to air the musical compositions at issue (Doc. # 12, Ex. A ¶ 7). He further stated that any such airing was done without his knowledge and without his knowledge that Plaintiffs' rights were being violated (*id.*). Johnson indicated that JCI employs a Director of Programming and Music, who is responsible for all programming and for assuring that JCI broadcasts only music which has been properly licensed to JCI (*id.*). He stated that he never consented to or authorized the airing of the musical compositions at issue (*id.*).

Upon a renewed review of this affidavit, Johnson's affidavit does not establish that he lacks the right and ability to supervise the selection of musical compositions at the radio station or that he has no direct financial interest in the station's activities. Moreover, as

noted in this Court's prior Decision (Doc. # 30), a controlling individual may be held vicariously liable even in the absence of any knowledge of the infringement. *E.g., All Nations Music*, 989 F.Supp. at 868–69; *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908 (D.Conn.1980); *Collins Court Music, Inc. v. Pulley*, 704 F.Supp. 963, 968 (W.D.Mo.1988). In addition, a defendant cannot escape liability by instructing its employees not to play copyrighted music. *Walden Music, Inc. v. C.H.W., Inc.*, 1996 WL 254654 (D.Kan. Apr.19, 1996); *Ackee Music, Inc. v. Williams*, 650 F.Supp. 653, 656 (D.Kan.1986). Accordingly, Defendant has *not* demonstrated that there is a genuine issue of material fact as to whether he may be held vicariously liable for the alleged infringement. Johnson's asserted lack of knowledge is not a defense to liability, although it may be a basis to reduce statutory damages.

for a total of $150,000 in statutory damages. They have further sought a permanent injunction, restraining Defendants from publicly performing any of the compositions at issue (Doc. # 27).

 Plaintiffs' request for a specific award of statutory damages in a motion for summary judgment gives the Court pause. The awarding of a specific amount of statutory damages is a factual determination, which would be made either by the Court or, if requested by a party, a jury. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998). Neither party has requested a jury trial on statutory damages, and, thus, the assessment of damages remains in the purview of the Court. In response to Plaintiffs' Motion, Defendants have set forth their reasoning for rejecting Plaintiffs' damages calculations and have proffered their own damage amounts. As a means of analysis, the Court will review Plaintiffs' Motion to determine whether Defendants have raised any genuine issue of material fact, which would require a trial before the Court on statutory damages. Should the Court conclude that no genuine issues of material fact remain, the Court will proceed to award damages in an amount deemed proper by the Court, in its discretion. *See Cass County Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 638 (8th Cir.1996).

### 1. *Statutory Damages*

In general, plaintiffs proving copyright infringement may elect either their actual damages and any additional profits of the infringer or statutory damages. 17 U.S.C. § 504(a). Section 504(c)(1) allows for statutory damages "for all infringements involved in the action, with respect to any one work, ... in a sum of not less than $750 or more than $30,000 as the court considers just." Where the copyright owner establishes willful infringement, the

Court may increase the award of statutory damages to a sum of not more than $150,000. *Id.* § 504(c)(2). On the other hand, where the infringers establish that they were not aware and had no reason to believe that their acts constituted copyright infringement, *i.e.*, innocent infringement, the Court, in its discretion, may reduce the award of statutory damages to a sum not less than $200. *Id.*

In the context of copyright law, the terms "willful" and "innocent" have specialized meanings. As stated by the Sixth Circuit,

> It seems clear that as here used, 'willfully' means with knowledge that the defendant's conduct constitutes copyright infringement. Otherwise, there would be no point in providing specially for the reduction of minimum awards in the case of innocent infringement, because any infringement that was nonwillful would necessarily be innocent. This seems to mean, then, that one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes." Melville B. Nimmer & David Nimmer, 3 *Nimmer on Copyright* §§ 14.04[B][3] (1996).

*Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir.1996). "Innocent" intent, however, is more than just the absence of willfulness. *National Football League v. PrimeTime 24 Joint Venture*, 131 F.Supp.2d 458, 476 (S.D.N.Y.2001). As the Second Circuit has explained:

> It is plain that "willfully" infringing and "innocent intent" are not the converse of one another. Thus, it is possible in the same action for a plaintiff not to be able to prove a defendant's willfulness, and, at the same time, for the defendant to

be unable to show that it acted innocently.

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.,* 807 F.2d 1110, 1115 (2d Cir.1986); *Prime-Time 24 Joint Venture,* 131 F.Supp.2d at 476.

It is well-established that trial courts have wide discretion in awarding damages within the statutory range provided in § 504(c)(1). *Columbia Pictures Indus., Inc. v. T & F Enters., Inc.,* 68 F.Supp.2d 833, 840 (E.D.Mich.1999). In determining the amount of damages to be awarded, courts generally consider (1) the infringer's blameworthiness, *i.e.,* whether the infringement was willful, knowing, or innocent, (2) the expenses saved and the profits reaped by the defendants in connection with the infringement, and (3) the revenues lost by the plaintiffs due to the defendants' conduct. *Id.; Fitzgerald Publ.,* 807 F.2d at 1117; *Boz Scaggs Music,* 491 F.Supp. at 914. The parties herein have substantially focused their arguments on Defendants' blameworthiness.

As stated, *supra,* in the present case, Plaintiffs assert that they are entitled to $25,000 per infringement, totaling $150,000 in statutory damages. They state that Defendants were sued by members of AS-CAP in 1994, and that judgment was entered against them in that case. Plaintiffs argue that Defendants were aware that the playing of copyrighted music in the ASCAP repertory would constitute a violation of the Copyright Act. Plaintiffs further note that, although Defendants allegedly had a "plan in place" to avoid the use of ASCAP's copyrighted music, infringing songs continued to be played. Based on that evidence, Plaintiffs assert that Defendants' broadcasting of copyrighted music in the ASCAP repertory was willful.

Defendants respond that they had no reason to believe that their broadcasting of the songs, "This Will Be" and "Always and Forever," infringed on Plaintiffs' copyrights, and that any award for these infringements should be limited to $200 for each of the two songs. They further argue that the Court should award $750 as damages for any infringement of "Happy Birthday," "I Wanna Know," "Sarah Sarah," and "I Only Have Eyes For You," because there is no evidence that they broadcasted these songs with knowledge of copyright infringement, and because Defendants did not benefit from the infringement nor were Plaintiffs harmed.

The broadcasting of Plaintiffs' songs falls into three categories. *First,* with regard to "Always and Forever," Defendants contend that the label on the CD indicated that the song was licensed by BMI, a licensing organization with which Defendants have an agreement. Thus, Defendants believed that they were playing a BMI song rather than an ASCAP song. *Second,* the songs, "This Will Be" and "Happy Birthday," were broadcasted by WDAO via a live-feed from Sheridan Broadcasting Network ("Sheridan"), a news network which provides hourly, live news and sports feed to the station (Johnson Depo. at 60). Defendants distinguish "This Will Be" from "Happy Birthday," indicating that only a small portion of "This Will Be" was played as background music for an NBC commercial. *Third,* Defendants assert that the remaining three songs were played as a result of human error, and that Plaintiffs have produced no evidence that the station played the songs with knowledge that their broadcast would violate Plaintiffs' copyrights.

a. *Always and Forever*

Beginning with "Always and Forever," Defendants state that the song appears on the CD entitled, "Bolero," and it is performed by Stanley Jordan (Doc. # 35, Ex. B). The album's cover indicates, in pertinent part:

Always and Forever (6:20)

(Rod Temperton)

Rod Songs BMI

(*Id.*) Defendants state that this notice indicates that the licensing organization was BMI, and that they reasonably relied upon that notice. Thus, they should be considered innocent infringers, pursuant to § 504(c)(2), and should be required to pay no more than $200 for airing this song.

Plaintiffs reply that reliance on record labels neither avoids liability for "mistakes" nor supports of finding of innocent infringement (Doc. # 36 at 5). They cite to *Unimusica, Inc. v. Spanish Community Radio, Inc.*, 1987 WL 16938 (D.N.M. Mar.20, 1987), in which the trial court found unpersuasive the defendants' assertion that they had tried to prevent infringement by instructing employees not to play any songs which were identified as ASCAP on the record labels or the album covers. The court reasoned:

> Mr. Tracy [ASCAP's Senior Account Executive] also informed Defendants that the absence of 'ASCAP' on the record label or album does not mean that the work is not included within the AS-CAP repertory. The Defendants were told that the only way they could determine if a work was licensed by ASCAP was to ask ASCAP. Defendants were told they if they would furnish ASCAP with a list of music titles, including the names of performers and writers, if known, that ASCAP would respond promptly and let them know which works were included within the ASCAP repertory. Defendants never asked AS-CAP if any specific works were in the ASCAP repertory.

*Id.* Because the defendants did not inquire whether certain songs were within AS-CAP's repertory, the court concluded that defendants could not rely on the absence of an ASCAP identification on the album label.

█ Construing the evidence in the light most favorable to Defendants, the Court finds the present situation to be distinguishable. Unlike the defendants in *Unimusica*, who relied on the absence of ASCAP on the label as a defense to their liability, Defendants herein are not relying upon the absence of such identification. Rather, they have relied upon the affirmative statement on the Bolero label that "Always and Forever" was in the BMI repertory. In other words, they were *not* in a situation where the label left them to guess the licensing organization, and they chose to risk whether the song was in the ASCAP repertory. Instead, the album label unambiguously stated that the song was licensed by BMI. Although Defendants could have contacted ASCAP to confirm that the song was not, in fact, in its repertory, courts have found reliance on an erroneous notice of copyright to be reasonable. *See Bagdadi v. Nazar*, 84 F.3d 1194 (9th Cir.1996) (defendant reasonably relied upon unambiguous, but erroneous, copyright notice on instructional video). Because Defendants bear the burden of demonstrating innocent infringement and, further, because Defendants have not filed a cross-motion for summary judgment, the Court may not conclude, as a matter of law, that Defendants are innocent infringers. Rather, for purposes of Plaintiffs' Motion, Defendants have raised a genuine issue of material fact as to whether they acted unreasonably by relying on the licensing information on the record label when they broadcasted "Always and Forever."[5] Accordingly, the

5. The Court notes, however, that Defendants' reasonable reliance on the BMI licensing statement would not relieve it from liability. Innocent infringement is still infringement. *Lexmark Intern., Inc. v. Static Control Compo-*

*nents, Inc.*, 253 F.Supp.2d. 943 (E.D.Ky. 2003). Rather, whether Defendants reasonably relied on the apparently erroneous label goes only to the issue of damages.

Court will not award damages for this claim at this time.

### b. *Music Broadcast By Live Feed From Sheridan*

Two of the songs in Plaintiffs' Complaint, "This Will Be" and "Happy Birthday," were broadcast via the live feed from Sheridan. Beginning with "This Will Be," Defendants contend that this is the "quintessence of a 504(c)(2) innocent infringement," indicating that a snippet of the song was used as part of an NBC commercial promoting its Tuesday night television lineup. Defendants argue that only a *de minimis* portion of the song was used, that they were unaware of NBC's failure to obtain permission to use the song, and that the commercial was transmitted as part of a live feed from Sheridan, a company that Defendants believed had permission to air the song.

Upon listening to the commercial containing "This Will Be," the Court finds Defendants' *de minimis* argument unavailing. "The Sixth Circuit has recognized that the principle of *de minimis non curat lex* ('the law cares not for trifles') can be applied as a defense to copyright infringement if it can be shown that a substantial amount of the copyrighted work was not taken." *Bridgeport Music, Inc., v. Dimension Films,* 230 F.Supp.2d 830, 839–40 (M.D.Tenn.2002), *citing Mathews Conveyor Co. v. Palmer–Bee Co.,* 135 F.2d 73, 85 (6th Cir.1943). "As a rule, a taking is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation." *Fisher v. Dees,* 794 F.2d 432, 434 n. 2 (9th Cir.1986), *citing Elsmere Music, Inc. v. National Broadcasting Co.,* 482 F.Supp. 741, 744 (S.D.N.Y.) (holding that a parodist's copying of four notes in a 100–measure composition was not merely a *de minimis* taking where that musical phrase was the heart of the composition), *aff'd per curiam,* 623 F.2d 252 (2d Cir.1980). Although "This Will Be" is played as background music for the NBC commercial, the music is heard throughout, and some of the lyrics, including the phrase "this will be an everlasting love," are clearly audible. Upon listening to the commercial (Doc. # 38, Ex. A), anyone familiar with the song will recognize it instantly. *Compare Bridgeport Music,* 230 F.Supp.2d at 842 (dismissing infringement claim where (1) no reasonable jury, even one familiar with the works of the author of the copyrighted song, would recognize the source of the digital sample without having been told of its source, (2) the quantitative copying was minimal, and (3) there was a the lack of qualitative similarity between the works). Under such circumstances, Defendants' broadcasting of "This Will Be" was not *de minimis,* as a matter of law.

Defendants further argue that the broadcasting of "This Will Be" and "Happy Birthday" was permissible under its contract with Sheridan, pursuant to which Sheridan provides live, hourly news feeds for broadcast over the station's airwaves (Johnson Aff. ¶ 3). Paragraph 8 of Defendants' agreement with Sheridan provides, in pertinent part:

> *LICENSES:* Broadcaster [Defendants] will maintain for Station such licenses, including performing rights licenses, as are necessary for the broadcast of SBN programs. SBN, however, will clear at the source all music in the repertories of such licensing organizations used on all SBN programs, other than cooperative programs.

(Doc. # 33, Ex. 7A). In his affidavit, Johnson states that he understood the contract to provide that Sheridan would only feed programming that is permissible under the station's license agreements (Johnson Aff. ¶ 6). Plaintiffs argue, focusing on the first sentence of paragraph 8, that Defendants'

agreement with Sheridan requires Defendants to obtain all necessary licenses, and that this requirement would be rendered meaningless if Defendants' interpretation of paragraph 8 were adopted.

Upon review of the contract, the Court finds that paragraph 8 ambiguously sets forth the obligations of the respective parties regarding which entity is to obtain the necessary licensing for the music broadcast on Sheridan's programs. Specifically, the second sentence may be read to mean that Sheridan will obtain permission "at the source" for the broadcast of "all music in the repertories of such licensing organizations used on all SBN" and, therefore, the stations receiving the live feed would be permitted to air the programs without fear of liability.

However, even accepting, *arguendo,* Defendants' interpretation of its contract with Sheridan, Defendants would not be innocent infringers. Courts have rejected claims of innocent infringement, even when the defendants had contractually agreed with the music performer not to play copyrighted songs. For example, in *Swallow Turn Music, Inc. v. Wilson,* 831 F.Supp. 575 (E.D.Tex.1993), the owner of a tavern contended that the band contractually agreed not to perform any materials which they were not authorized to perform. He therefore claimed that he did not violate the copyright laws with respect to the four songs played by the band. *Id.* at 578–79. The Court rejected the owner's contentions, noting that the defendant was repeatedly made aware that his usual business practices resulted in copyright violations. *Id.* at 580. "He cannot shield himself by a willing veil of ignorance woven by a series of contracts and agreements between himself and his employees, servants, and independent contractors." *Id.* The court therefore concluded that "[the owner's] defense that he did not know that the band was unlicensed and that he had a contract with the band requiring them to not play unauthorized songs cannot absolve him from a finding of willful violation due to ASCAP's repeated notice to him of his responsibilities under the copyright laws." *Id.* at 580. Thus, *Swallow Turn Music* teaches that a broadcaster who is aware of his obligations under copyright law remains responsible for ensuring that copyrighted music is not aired without permission. The defendant cannot avoid liability by contractually placing that responsibility on others, and a breach of that contract does not render the defendant an innocent infringer.

Like the tavern owner, Defendants were made aware that their broadcasting of music in the ASCAP repertory would constitute copyright infringement. It remained their responsibility to ensure that ASCAP music would not be played on their radio station. Although Defendants' contract with Sheridan arguably provided that Sheridan would ensure that Defendants could broadcast any music that it included in its programs, Defendants cannot avoid liability for knowing or willful violations by that contract. Accordingly, the Court concludes that no genuine issue of material fact exists as to whether Defendants were innocent infringers when they broadcast "This Will Be" and "Happy Birthday." The uncontroverted evidence indicates they were not. Accordingly, the Court agrees with Plaintiffs that Defendants are not entitled to a reduction of the award of statutory damages to a sum not less than $200 and, further, that Defendants may be held liable for willful infringement.

#### c. *Remaining Three Songs*

With regard to Plaintiffs' three additional counts of infringement, Defendants argue that they have attempted to avoid any airing of ASCAP songs by instructing their employees not to play music in the ASCAP repertory. Despite their efforts, some AS-

CAP songs were accidentally played. As stated by Defendants, "[n]o policy is foolproof, and no number of reminders can ensure that mistakes will not be made." (Doc. # 35 at 8).

■ Defendants' argument is unavailing. It is widely accepted that attempts to avoid infringing behavior by instructing employees not to play the copyrighted music does not render the "accidental" infringement innocent when the defendant is given prior notice of his obligations under the copyright laws. *Swallow Turn Music, Inc.*, 831 F.Supp. at 580 ("Mr. Wilson's defense that he did not know that the band was unlicensed and that he had a contract with the band requiring them to not play unauthorized songs cannot absolve him from a finding of willful violation due to ASCAP's repeated notice to him of his responsibilities under the copyright laws."); *Walden Music, Inc. v. C.H.W., Inc.*, 1996 WL 254654 (D.Kan. Apr.19, 1996); *Ackee Music, Inc. v. Williams*, 650 F.Supp. 653, 656 (D.Kan.1986); *Broadcast Music, Inc. v. Hobi, Inc.*, 1993 WL 404152 (E.D.La. June 24, 1993) (court awarded statutory damages for willful violation when evidence provided of numerous notices to defendant that his conduct infringed on the plaintiff's copyrights, even though the defendant denied any personal knowledge that the compositions were played and contended that employees were instructed not to play BMI music and that a sign was posted in the disc jockey booth which instructed them not to play BMI music); *Cass County Music Co.*, 88 F.3d at 637–38; *see Vasiliou*, 838 F.Supp. 1220. As stated by the United States District Court for the Western District of New York in *Barnaby Music Corp. v. Catoctin Broadcasting Corp. of N.Y.*, 1988 WL 84169 (W.D.N.Y. Aug.10, 1988):

It is without question, however, that the defendants' infringements were willful. They had been put on notice that they were in default on their license fee but had failed to pay such. After the thirty-day notice period had expired ASCAP had informed the defendants that their license was terminated as of September 4, 1985[,] and that any public performances of ASCAP material, without prior authorization from the copyright owners, would constitute copyright infringement. Nonetheless, the defendants' radio station played the nine copyrighted works [on] December 23, 1985. Serafin's claims that he instructed the station's personnel not to play ASCAP material, and that he took other attempts to keep such material from being broadcast, do not raise a question of fact whether the infringement was willful. The defendants, in direct contravention of ASCAP's notices and the Copyright laws of the United States, allowed the public broadcasting of the nine compositions. This, without question, constitutes willful copyright infringement. Catoctin is no stranger to copyright infringement actions, as it had been sued before for similar violations. Although that case had been settled, it is still persuasive to this Court that the defendants were aware of the consequences of playing copyrighted works without a license or other authorization. Furthermore, a station's owner and manager can not be allowed to avoid the consequences of the station's actions by claiming it was the fault of a lower echelon of employees.

*Id.*

Herein, the uncontroverted evidence indicates that Defendants' ASCAP license expired in 1993, and they were on notice that continued broadcasting of music in the ASCAP repertory would constitute copyright infringement. In fact, it is undisputed that Defendants were sued by members of ASCAP in 1994. Defendants emphasize (and it is undisputed) that they attempted to avoid the airing of ASCAP music by

instructing the station's personnel not to play ASCAP material and by marking on each CD which "cut" could be played. Nevertheless, Plaintiffs have provided uncontroverted evidence that ASCAP music continued to be played by WDAO's on-air announcers. Construing the evidence in the light most favorable to Defendants, there is no genuine issue of material fact as to whether Defendants qualify as innocent infringers. The undisputed evidence indicates that they do not and, moreover, that they may be held liable for willful infringement, as a matter of law.

In summary, construing the evidence in the light most favorable to Defendants, JCI and Johnson have failed to create a genuine issue of material fact as to their blameworthiness for five of the six counts of infringement. Upon review of the evidence, Plaintiffs are entitled to statutory damages for Defendants' willful violation of the Copyright Act when it aired "Happy Birthday," "I Wanna Know," "Sarah Sarah," "I Only Have Eyes For You," and "This Will Be (An Everlasting Love)."[6]

As for the amount of damages for these five claims, Plaintiffs suggest that, in light of Defendants' willfulness, the Court should consider estimated licensing fees that the station would have owed, if licensed since 1993, as an appropriate standard of determining damages (Doc. # 33 at 15–16). According to the affidavit of Ms. Pamela Blank, an Account Manager in ASCAP's Broadcast Licensing Department, if properly licensed by ASCAP through November of 2002, WDAO would owe $62,569 in license fees, subject to audit and adjustment upon receipt of outstanding annual report forms (Doc. # 33, Ex. 2 ¶ 21). Plaintiffs further state that they monitored

WDAO broadcasts in 1993, 1995, 1996, 2000, 2001 and 2002, and that copyrighted songs were played during each monitoring session. They argue that it would be an excessive burden for copyright owners to monitor a station on a daily basis, and that the Court should extrapolate from the alleged violations herein that Defendants infringed on their copyright for the eight years preceding their lawsuit, during which Defendants did not maintain an ASCAP license. Defendants respond that only those license fees that the radio station would have owed for 2001 is the proper benchmark, because five out of the six songs were performed during that year.

The Court acknowledges that estimated licensing fees have been used by a number of courts in determining damage awards. The Court disagrees, however, that it may assess damages for Defendants' conduct, dating back to 1993. 17 U.S.C. § 507(b) establishes a three-year statute of limitations for civil copyright infringement actions. By awarding statutory damages based on assumed infringements going back to 1993, the Court would be permitting Plaintiffs to recover for untimely claims and for claims which have not been proven with evidence. In addition, Plaintiffs ignore the fact that they litigated Defendants' prior copyright infringement in 1994 and received a default judgment in 1995. Thus, Plaintiffs have already been compensated for that time period. *See International Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir.1988) ("the damages only were approximately three times the amount that a properly purchased license would have cost [defendant] over the relevant period."). Upon review of the evidence submitted, including information

---

6. The Court notes that, for all practical purposes, it is irrelevant whether Defendants' violations of the Copyright Act were willful, as opposed to knowing. Plaintiffs have requested $25,000 for each copyright violation, which is within the range of damages of knowing violations. In other words, Plaintiffs have *not* requested damages of more than $30,000 per infringement, which would require them to establish willful violations.

regarding Defendants' financial status, the Court concludes, in the exercise of its discretion, that an award of $4,000 [7] per infringement (for a total of $20,000 for the five infringements ruled upon herein) satisfies the Act's compensatory and deterrent goals. [8] *E.g., F.W. Woolworth Co. v. Contemporary Arts,* 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952); *National Football League v. Rondor, Inc.,* 840 F.Supp. 1160, 1168 (N.D.Ohio 1993).

### 2. *Injunctive Relief*

The Copyright Act grants the Court broad powers to enjoin infringement. The Act provides in pertinent part, that "[a]ny court having jurisdiction of a civil action arising under this title may, ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "While the issuance of an injunction is in the discretion of the court, courts have traditionally granted permanent injunctions if liability is established and a continuing threat to a copyright exists." *Swallow Turn Music,* 831 F.Supp. at 581 (citation omitted); *Vasiliou,* 838 F.Supp. at 1226 ("A showing of past infringement and a substantial likelihood of future infringement entitles a copyright owner to permanent injunction."). The Court may issue a permanent injunction without an evidentiary hearing when no triable issues of fact are involved. *United States v. McGee,* 714 F.2d 607, 613 (6th Cir.1983); *United States v. Miami University,* 294 F.3d 797, 815 (6th Cir. 2002).

In the present case, Johnson acknowledged in his deposition that no substantive change was made to the "no-ASCAP" policy after the 1994 lawsuit. Rather, the Program Director monitored the situation more closely and made sure that the CDs were clearly marked, and the policy was restated more forcefully to employees (Johnson Depo. at 49–53). Despite Defendants' efforts to avoid the playing of ASCAP music, copyrighted music has continued to be aired. Thus, there is no genuine issue of material fact about the effectiveness of Defendant's policies; rather, it is apparent that the measures taken by Defendants to prevent violations of the Plaintiffs' copyrights have not proven completely effectual. Under these circumstances, the court deems it appropriate to grant a permanent injunction, restraining Defendants from publicly performing, without a license, any of the compositions in the ASCAP repertory. *See Walden Music, supra.*

### 3. *Attorneys Fees and Costs*

Section 505 of the Copyright Act permits the Court, in its discretion, to award the recovery of full costs, including reasonable attorneys fees. 17 U.S.C. § 505. Because the amount of damages for the broadcasting of "Always and Forever" remains at issue and, consequently, this Decision does not resolve all of Plaintiffs' claims, the Court will postpone considering whether such relief is appropriate until that remaining issue has been resolved.

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (Doc. # 33) is SUSTAINED in PART and OVERRULED in PART. Plaintiffs' Motion for Summary Judgment on the issue

---

7. The Court notes that the plaintiffs in the 1994 action against Defendants received a judgment of $17,500, plus attorney fees and costs, for the seven infringements at issue therein (*See* Doc. # 36, Ex. 1B; *see also* Case No. C–3–94–255, Doc. # 9). Thus, the plaintiffs received $2,500 for each infringement.

8. The Court reiterates that it will not award damages at this time for Defendants' infringing broadcast of the song, "Always and Forever." Rather, a trial is required to determine statutory damages for that infringement.

of Defendants' liability for copyright infringement is SUSTAINED. With regard to damages, the Court awards statutory damages in the amount of $6,000 per violation for Defendants' broadcasting of the songs, "Happy Birthday," "I Wanna Know," "Sarah Sarah," "I Only Have Eyes For You," and "This Will Be (An Everlasting Love)." The Court also issues a permanent injunction, restraining Defendants from publicly performing, without a license, any of the compositions in the ASCAP repertory. Because a genuine issue of material fact exists regarding Defendants' blameworthiness regarding their broadcasting of "Always and Forever," the Court will not assess damages, at this juncture, for that copyright violation. In addition, because this Decision does not resolve all of the issues in this litigation, the Court defers ruling on Plaintiffs' request for attorney fees.

Counsel listed below will take note that a telephone conference call will be had, beginning at 4:30 p.m., on Wednesday, August 20, 2003, for the purpose of setting a trial date and other dates leading to the resolution of this litigation.